Argued and submitted April 30, 2015, reversed and remanded August 24, 2016, petition for review denied January 13, 2017 (360 Or 752)

THOMAS WILSON,
*Petitioner-Appellant,*

*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
10C14338; A152729

381 P3d 921

W. Michael Gillette, Senior Judge.

Clayton Lance argued the cause for appellant. On the brief was Larry R. Roloff.

Michael J. Slauson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

**GARRETT, J.**

In this post-conviction case, petitioner contends that he received inadequate assistance of counsel in his underlying trial for first-degree rape. Petitioner was charged with four counts of raping his niece, C.[1] At trial, the state presented evidence of multiple incidents that would have supported a conviction for first-degree rape. However, at no point did the state elect which incident was to form the basis for any particular charge, nor did petitioner's attorney request a jury concurrence instruction, also commonly known as a "*Boots*" instruction, informing the jury that at least 10 members had to agree on the occurrence forming the basis for a count of conviction. *See State v. Boots*, 308 Or 371, 780 P2d 725 (1989). The jury found petitioner guilty of two counts and acquitted him of two counts.

Petitioner contends that his trial counsel's failure to request a *Boots* instruction amounted to inadequate assistance, in violation of petitioner's rights under Article I, section 11, of the Oregon Constitution. The post-conviction court denied relief, concluding that, although petitioner's counsel should have requested the instruction, petitioner was not prejudiced by the omission. Petitioner appeals. For the reasons explained below, we reverse. We conclude that constitutionally adequate counsel would have requested a *Boots* instruction in petitioner's case. We further conclude, contrary to the post-conviction court, that the inadequacy of the representation at petitioner's trial had a tendency to affect the verdict. That is so because it is possible that the jury convicted petitioner of two counts of first-degree rape without understanding that, to do so, 10 of them had to agree on the specific occurrences underlying those convictions. Accordingly, petitioner has demonstrated prejudice and is entitled to relief on his post-conviction claim.

We state the facts consistently with the findings of the post-conviction court, which are binding if there is evidence in the record to support them. *Logan v. State of Oregon*, 259 Or App 319, 321, 313 P3d 1128 (2013), *rev den*, 355 Or 142 (2014). Petitioner went to trial in 2009 on five counts of

---

[1] Petitioner was also convicted of one count of first-degree rape of a different victim, S. That conviction is not at issue in this case.

first-degree rape: one count involving S (the victim in Count 1) and four counts involving C, petitioner's teen-aged niece (the victim in Counts 2 through 5). As noted above, this post-conviction case concerns only the four counts involving C. Those four counts were stated identically in the indictment, as follows: "The defendant, on or between January 1, 2001 to October 1, 2008, in Coos County, Oregon, did unlawfully and knowingly, by forcible compulsion, engage in sexual intercourse with [C]."

The number and nature of the charges against petitioner were described to the jury at several distinct points. In its introductory jury instructions, the trial court described the four counts of rape against petitioner involving C, as follows:

"Charge 2, Rape in the First Degree[;] *** Charge 3 is alleged, as a separate and distinct act, Rape in the First Degree[;] *** Count 4, Rape in the First Degree, alleged as a separate and distinct event *** [;] and finally, Charge 5, Rape in the First Degree, alleged as a separate and distinct act[.]"

C testified to four discrete incidents of rape. According to C, the first rape occurred in her bedroom around midnight while her mother was working; petitioner "overpowered [her] and took [her] virginity" on that occasion. C testified that "[n]o longer than a week" later, petitioner again raped her in the "evening hours" in her mother's bedroom while her mother was at work. Approximately "a week or two—no longer than a month" after that, there was "another incident" in which petitioner raped C a third time, while her mother slept in a room upstairs. During that incident, C testified that petitioner came into her room with a condom on and "muffled [her] face with a pillow" and "forced [her] to have sexual intercourse with him." C testified that petitioner raped her a fourth time in her own bedroom while her mother was not home.

In addition to the four incidents of rape, C also testified to an incident in which she and other members of her family, including petitioner, were all in a hot tub together, and, after C's mother and aunt got out, petitioner rubbed his foot on C's leg and moved "it up towards [her] privates."

C testified about another incident in which petitioner made a sexual advance towards her but quit when C's aunt came home early.

Petitioner's defense theory was that none of the alleged rapes occurred. Petitioner sought to cast doubts on C's reliability, citing inconsistencies in her statements to police. During cross-examination, petitioner attempted to impeach C with information that she had told an investigating police officer, Sergeant Hermann, that petitioner had raped her six times, not four. C responded that she recalled telling the officer about "six incidents that [she] was aware of * * * [but] not necessarily as in rape" and that she did not remember because she had "a tendency to mix up the scenarios and situations" as a coping mechanism.

Hermann also testified that C told him she "was raped six times." Petitioner's counsel asked Hermann to describe what C said about "the first of these six rapes." Hermann responded that C told him she had been "sleeping in her mom's bed and one night [petitioner] had * * * come in * * * [and] 'forced himself' on her." Petitioner's trial counsel then asked Hermann to describe the "last time" petitioner raped C, which Hermann described as when her "mother was upstairs" and petitioner "smothered her face with a pillow." (That incident was the third of four described by C in her own testimony.) Petitioner's counsel asked Hermann whether, "other than these two specific incidents of alleged rape * * * were there any other instances where [C] gave any details of rapes * * * other than to tell you there were six?" Hermann replied that C had not "specified with regard to the other ones[; she] just articulated that these events occurred six times."

In a colloquy with counsel on a matter unrelated to the issues in this appeal, the trial court observed that C's testimony reflected at least four discrete incidents of rape, although the trial court appeared to be uncertain about the order of events:

"My notes reflect * * * at least four incidents. The first incident that I heard [C] talk about was an incident where she lost her virginity. * * * The second incident that she talked about was where he allegedly grabbed her arms.

\* \* \* The third incident—And I'm not so sure these are all in order \* \* \* [t]he third incident she talked about— [petitioner] coming into the room, muffling her face with a pillow. She testified that he forced her to have sex. That's when she said that—she testified that he said, 'If you ever say anything, I will hurt you and your family,' and she considered that to be a threat. \* \* \* [T]hen there was a fourth incident that she said was him entering into a bedroom, ripping off the underwear. She talked about forcing and, again, a statement about, 'Don't be telling anybody about this.' \* \* \* Quite frankly, it was a little bit jumbled towards the end there. But, I made enough notes that I'm confident that there [were] at least four incidents[.]"[2]

The prosecution did not elect which incident of rape described by C was to be the basis for any of the four counts. It is also undisputed on appeal that neither the parties nor the trial court said anything in the jury's presence that *expressly* connected any count of rape to any particular factual episode. During closing argument, the prosecutor said that C had been forcibly raped by petitioner "on four separate occasions" but said nothing that linked any particular occasion to any of the four counts.

After the close of evidence, the jury was instructed that, "ten or more jurors must agree on your verdict, either guilty or not guilty." The verdict form listed all five counts and specified that Count 1 concerned S and Counts 2 through 5 concerned C. Aside from the victims' names, however, there was no information differentiating the charges by factual circumstances. As to C, the verdict form read:

"As to Count 2, Rape in the First Degree, alleging [C] as the victim, we find the defendant: __GUILTY __ NOT GUILTY

"As to Count 3, Rape in the First Degree, alleging [C] as the victim, we find the defendant: __GUILTY __ NOT GUILTY

---

[2] The trial court's reference to the incidents being "a little bit jumbled towards the end there" may be a reflection of the fact that, according to the trial transcript, after describing the first two incidents, C began describing what was actually the fourth incident. The prosecutor stopped C, apparently attempting to elicit the incidents in chronological order. C then described the third incident, followed by the fourth incident.

"As to Count 4, Rape in the First Degree, alleging [C] as the victim, we find the defendant: __GUILTY __ NOT GUILTY

"As to Count 5, Rape in the First Degree, alleging [C] as the victim, we find the defendant: __GUILTY __ NOT GUILTY"

The jury was also instructed that, to establish that petitioner was guilty of the first-degree rape of C, the state had to prove beyond a reasonable doubt, on all counts, that: (1) the charged acts took place in Coos County, Oregon; (2) the acts took place between January 1, 2001 and October 1, 2008; (3) petitioner knowingly had sexual intercourse with C; and (4) C was subjected to forcible compulsion during the acts.[3] Petitioner did not request, nor did the trial court issue, an instruction that 10 members of the jury were required to agree as to which factual occurrence provided the basis for any particular count of conviction.

The jury convicted petitioner on Counts 2 and 5 but acquitted him on Counts 3 and 4. In response to a series of questions from the trial judge, the presiding juror confirmed that at least 10 jurors had agreed on each of the four counts.

Petitioner sought post-conviction relief, alleging, as relevant to this appeal, that his trial counsel was inadequate for failing to request a jury instruction requiring 10 jurors to agree on a common nucleus of facts for each count of conviction.[4] Such a "jury concurrence" instruction is also referred to as a *"Boots"* instruction. *See Boots*, 308 Or 371 (explaining the necessity of jury concurrence on all material elements of a crime for which a defendant is convicted). Put another way, a *Boots* instruction requires jurors to concur "as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *Id.* at 380 (quoting *United States v. Gipson*, 553 F2d 453, 457-58 (5th Cir 1977)). Defendant, the superintendent of the Oregon

---

[3] ORS 163.375, rape in the first degree, provides, in relevant part, that:

"(1) A person who has sexual intercourse with another person commits the crime of rape in the first degree if:

"(a) The victim is subjected to forcible compulsion by the person[.]"

[4] Petitioner's direct appeal was dismissed in December 2009.

State Penitentiary,[5] agreed that, under the circumstances of petitioner's trial, a *Boots* instruction was unnecessary, and, even if the instruction would have been appropriate, petitioner failed to prove that he was prejudiced by its omission.

In an affidavit, petitioner's trial counsel explained that he did not request a *Boots* instruction

"because such an instruction was not warranted. *Boots* applies when competing theories on how a crime occurred is presented or when there are multiple incidents that occurred during the timeframe of one of the crimes charged. In such a case, *Boots* would require jurors to agree upon which theory of the crime or which specific events support the conviction. [C] testified as to specific times and places when petitioner allegedly raped her. Thus Counts 2 through 5 each pertained to a specific time and place."

The trial prosecutor submitted an affidavit similarly asserting that C "testified as to specific times and places when she was raped by the petitioner. The presentation of my case turned on her testimony so that each count of Counts 2 through 5 pertained to a specific time and place. Clearly, the jury understood that each count represented a specific incident as they chose to find him not guilty of two of those events."

In colloquy with the parties, the post-conviction court inquired whether, at trial, any of the four counts was expressly linked to a particular incident. The court then noted that, in the absence of such a linkage,

"I have to assume that if the jury did it the right way, they did it because they internally chose to identify each of the counts with a particular allegation of rape and then this is internally in the jury room, and they took a vote on each based upon their own internal discussions about it and never disclosed that to anybody else. So we just would have to take it on faith that that's what they did."

Defendant asserted that, under the circumstances of the trial, the jury would not have been confused as to which incident corresponded to which count:

---

[5] Pursuant to ORS 138.570, the superintendent of petitioner's place of incarceration is designated defendant in a post-conviction proceeding.

"[T]he two main attorneys in the case who are processing that in front of the jury and in front of the judge, being comfortable with the group dynamic there that was apparent to everybody, maybe not from a cold review of the transcript, but it was apparent to everybody there, judge, the two attorneys, their assessment was that the jury was tracking, that although perhaps instructions may not have been as explicit as we would like, the jury is understanding there are four counts here, each is tied to a particular discrete incident as described by the victims. The affidavits describe that understanding, they point—for example, the District Attorney repeatedly confirms that that was his approach in the case and his outline. Certainly there's nothing from their assessments while watching the jury or watching the interactions with the judge and jury that they saw any ambiguity or lack of understanding."

The post-conviction court entered a judgment denying post-conviction relief, concluding that, although "in the abstract" a *Boots* instruction should have been requested, petitioner had failed to show prejudice because "the four incidents of rape occurred at identifiably different times, and the jury showed that it could differentiate by finding petitioner [not guilty] on two counts."

On appeal, petitioner argues that the post-conviction court correctly concluded that a *Boots* instruction should have been requested, but incorrectly concluded that the failure to do so was not prejudicial. Petitioner asserts that, because "no particular count was linked to a factual nucleus[,] * * * there is simply no way to know whether at least ten jurors agreed as to any particular incident."

Defendant responds that Counts 2 through 5 were supported at trial by evidence of four separate rapes, and that petitioner's counsel therefore "could have reasonably concluded that a [*Boots*] instruction was not obviously required because there was no risk for jury confusion." Defendant also argues that petitioner cannot show prejudice because there is no evidence that "the jury was uncertain about which incident applied to which charge."

Post-conviction relief is warranted "when there has been a 'substantial denial' of a petitioner's 'rights under the Constitution of the United States, or under the Constitution

of the State of Oregon, or both, and which denial rendered the conviction void.'" *Gable v. State of Oregon*, 353 Or 750, 758, 305 P3d 85, *cert den*, ___US___, 134 S Ct 651 (2013) (quoting ORS 138.530(1)(a)). For petitioner to prevail on his inadequate assistance claim under Article I, section 11, he must prove, by a preponderance of the evidence, facts demonstrating that his trial counsel failed to exercise "reasonable professional skill and judgment and that petitioner suffered prejudice as a result." *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991).[6] "[O]nly those acts or omissions by counsel which have a tendency to affect the result of the prosecution can be regarded as of constitutional magnitude[.]" *Krummacher v. Gierloff*, 290 Or 867, 883, 627 P2d 458 (1981). Unquestionably, however, "'adequate' assistance requires an attorney to 'investigate the facts and * * * law to the extent appropriate to the nature and complexity of the case so that [counsel] is equipped to advise his [or her] client, exercise professional judgment[,] and represent the [client] in an informed manner.'" *Burcham v. Franke*, 265 Or App 300, 306-07, 335 P3d 298 (2014) (quoting *Krummacher*, 290 Or at 875) (first three brackets in *Burcham*; last brackets added).

In determining whether trial counsel failed to exercise reasonable professional skill and judgment, we look to the state of the law at the time of petitioner's criminal trial. *Peralta-Basilio v. Hill*, 203 Or App 449, 452, 126 P3d 1 (2005). As to prejudice, a petitioner must demonstrate that counsel's deficient performance "had a tendency to affect the result of the trial." *Gable*, 353 Or at 759. *See also Green v. Franke*, 357 Or 301, 322, 350 P3d 188 (2015) (explaining that "the tendency to affect the outcome standard demands more than mere possibility, but less than probability").

Accordingly, we first consider petitioner's contention that his trial counsel should have, in the exercise of reasonable skill and judgment, requested a *Boots* instruction.

---

[6] Before the post-conviction court, petitioner also argued that he received ineffective counsel under the Sixth and Fourteenth Amendments to the United States Constitution. He does not pursue that argument on appeal. In any case, "[t]he standards for determining the adequacy of counsel's representation are functionally equivalent under the state and federal constitutions." *Smith v. Franke*, 266 Or App 473, 477, 337 P3d 986 (2014), *rev den*, 356 Or 689 (2015) (internal quotation marks omitted).

We conclude that trial counsel should have requested the instruction.

The relevant case law derives from *Boots*, although that case did not actually determine whether or when a concurrence instruction is required. 308 Or at 373. In *Boots*, rather, the Supreme Court concluded that a trial court had erred when it instructed the jury that it need *not* agree on the particular "aggravating" circumstance underlying the charge of aggravated murder. *Id.* In holding that such an instruction was erroneous, the court explained that the instruction "relieve[d] the jury from seriously confronting the question whether they agree that any factual requirement of aggravated murder has been proved beyond a reasonable doubt, so long as each juror is willing to pick one theory or another." *Id.* at 375. That was so because

> "'[t]he unanimity rule *** requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged. Requiring the vote of [a requisite number of] jurors to convict a defendant does little to insure that his [or her] right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required.'"

*Id.* at 380 (quoting *Gipson*, 553 F2d at 457-58). The court explained that the concurrence requirement does not extend to "factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or the left hand." *Id.* at 379. Rather, the requirement concerns "facts that the law (or the indictment) has made essential to a crime." *Id.*

Several cases since *Boots* have applied the requirement that juries, in certain circumstances, must be specifically instructed regarding the need that at least 10 jurors agree on the factual occurrences underlying the material elements of a crime. Those circumstances have fallen into two basic categories: (1) cases in which "a statute defines one crime but specifies alternative ways in which that crime can be committed"; and (2) cases where an indictment "charges a single violation of a crime but the evidence permits the jury to find multiple, separate occurrences of that crime." *See State v. Pipkin*, 354 Or 513, 516-17, 316 P3d 255 (2013)

(reviewing cases and so explaining). This case implicates, if anything, the second category; that is, the state charged four counts of rape and presented evidence of multiple incidents of rape without expressly informing the jury, by election or instruction, which count was to correspond with which factual occurrence.

Case law since *Boots*, well established by the time of petitioner's 2009 trial, reinforces the basic idea that, where the jury is presented with evidence of multiple factual occurrences, each of which could independently support a conviction, then either the state must elect which occurrence is to be the basis for the charge or the jury must be instructed that 10 jurors must agree on a particular occurrence as a predicate for conviction. *See, e.g., State v. Hale*, 335 Or 612, 627, 75 P3d 448 (2003), *cert den*, 541 US 942 (2004) (trial court plainly erred in failing to give concurrence instruction where the state charged the defendant with multiple counts of aggravated murder based on multiple underlying felonies against different victims, and there was conflicting evidence as to which of two perpetrators had committed each of the underlying crimes); *State v. Lotches*, 331 Or 455, 461, 470-71, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001) (where defendant was charged with three counts of aggravated murder of a single victim, based on different aggravating circumstances involving different underlying felonies with victims other than the murder victim, the trial court plainly erred in failing to give a jury concurrence instruction because the "identity of the victim or the circumstances of the underlying felony is information that is material and for which jury unanimity is required" (emphasis omitted)); *State v. Houston*, 147 Or App 285, 287, 292-93, 935 P2d 1242 (1997) (where defendant was charged with unlawful delivery of a controlled substance and the state presented evidence that "the crime could have occurred at any of six different times," the trial court erred by "neither requir[ing] the state to elect which of the separate occasions it had established at trial was to be the basis for the jury's decision nor deliver[ing] instructions properly instructing the jury as to its obligation to base its decision on a single criminal act").[7]

---

[7] In contrast, no *Boots* instruction was required in *State v. Sparks*, 336 Or 298, 83 P3d 304, *cert den*, 543 US 893 (2004), where the defendant, the sole

In light of the foregoing, we agree with the post-conviction court that petitioner's trial counsel should have, in the exercise of reasonable skill and judgment, requested a *Boots* instruction. Petitioner was charged with four counts of rape against C. The four counts were stated in identical terms in the indictment; none of them was linked to a date or any other differentiating facts. At trial, the state presented evidence of multiple occurrences that could have supported a rape conviction. Thus, under a straightforward application of the *Boots* principle, either the prosecution should have been required to elect which factual occurrence it was relying on for each count, or the jury should have been instructed that it had to agree on what factual occurrence formed the basis for conviction on a particular count. Petitioner's counsel should have been aware that, under *Boots* and its progeny, the risk of jury nonconcurrence is applicable "to any crime that is pleaded in multiple counts where a jury is inadequately instructed as to which factual theories and evidence apply to which counts." *State v. Pervish*, 202 Or App 442, 462, 123 P3d 285 (2005), *rev den*, 340 Or 308 (2006).

Indeed, we understand defendant to concede, at least implicitly, that if petitioner had been charged with a single count of rape, a concurrence instruction would have been warranted. Defendant's theory on appeal is that no *Boots* problem existed here because petitioner was charged with a number of counts—four—that corresponds to the number of discrete incidents of rape described by C at trial. Even though the jury was not explicitly instructed that "Count 2" was the first described rape, "Count 3" was the second described rape, and so forth, defendant contends that the jury would have had that understanding in light of how the evidence was presented. Thus, according to defendant, because the lawyers at petitioner's trial "referred to the incidents [of rape] in chronological order," "reasonable trial counsel could conclude that the jury would follow the same pattern."

perpetrator, was charged with multiple counts of aggravated murder against a single victim, based on several different theories of aggravation involving five distinct underlying crimes. The Supreme Court reasoned that, although the evidence could have supported different determinations about the locations where the underlying offenses occurred, "[n]othing about the crimes charged in this case demonstrates that the precise location of the underlying crimes constitutes a *material* element of those crimes." *Id.* at 316-17 (emphasis added).

We are not persuaded. As an initial matter, the record of the trial suggests that the presentation was not as chronologically precise as defendant suggests. As noted, the trial court itself observed at one point that the order was "a little bit jumbled towards the end there." And, although it is clear that C testified to four discrete incidents of rape, she also testified that she had "a tendency to mix up the scenarios and the situations." And Hermann, the police officer, testified that C had reported as many as six rapes.

More fundamentally, however, even if one were to construe the record as being clear as to the number and order of incidents, that does not obviate the *Boots* problem. The fact remains that, for each of the four counts of rape, jurors had multiple incidents from which to choose, and they were not instructed that ten of them had to agree on the *same* incident to convict on a count. It is certainly possible, as defendant contends, that the jury understood—even without election by the prosecution, or any specificity in the verdict form—that particular counts were meant to be associated with particular incidents. It is also possible, as defendant contends, that the jury understood—even without a concurrence instruction—that ten jurors had to agree that the same incident had occurred to convict on whatever count was associated with it. But a criminal defendant is not required to take the chance that the jury will correctly follow the law without being instructed how to do it. Here, it is also possible that the jury did not understand that a connection between certain incidents and certain counts was even required. Without a concurrence instruction, the jury could have believed that, so long as ten of them agreed that the requisite elements of first-degree rape were in place on two occasions, then that was sufficient to support convictions on two counts. In short, as the post-conviction court correctly pointed out, one

> "ha[s] to assume that if the jury did it the right way, they did it because they internally chose to identify each of the counts with a particular allegation of rape and * * * took a vote on each based upon their own internal discussions about it and never disclosed that to anybody else. So we just would have to take it on faith that that's what they did."

Petitioner's counsel should have, in the exercise of reasonable skill and judgment, requested a concurrence instruction so that one was not required to take it "on faith" that the jury understood its obligation.[8]

The second issue we must address is whether petitioner demonstrated prejudice. Our recent decision, *Mellerio v. Nooth*, is instructive. 279 Or App 419, 379 P3d 560 (2016). In *Mellerio*, a recent post-conviction *Boots* case, this court concluded that the petitioner's trial counsel was constitutionally inadequate for failing to request a *Boots* instruction as to two counts because the evidence at trial "substantiated at least two temporally, spatially, and substantively distinct occurrences" of a particular charge. *Id.* at 432. Important to our discussion here, we also recalibrated how to address prejudice in *Boots* cases following the "intervening guidance" in *Ashkins*, which we found "considerably more nuanced" than our prior constructions. *Id.* at 434. There, we explained that,

"in cases of instructional error, specifically including such error involving jury concurrence instructions, an appellate court should assess putative prejudice (or the lack thereof) 'in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue. * * * [S]uch a practical focus on the context of the entire record is a useful tool in instructional error cases.'"

*Id.* at 433 (quoting *State v. Ashkins*, 357 Or 642, 660-61, 357 P3d 490 (2015) (internal citation omitted)).

In concluding that the petitioner was prejudiced by his counsel's failure to request a *Boots* instruction, we reasoned, "there were potentially significant circumstantial and evidentiary distinctions between the two factual scenarios" and that jurors could draw "diametrically different inferences" from them. *Id.* at 436. That was so because, even

---

[8] We emphasize that there is no suggestion on appeal that petitioner's counsel understood that a *Boots* problem existed but made a tactical decision not to request an instruction. *See Cunningham v. Thompson*, 186 Or App 221, 226, 62 P3d 823, *adh'd to as modified on recons*, 188 Or App 289, 71 P3d 110 (2003) (explaining that a reviewing court "will not second-guess a lawyer's tactical decisions unless those decisions reflect an absence or suspension of professional skill and judgment"). Rather, petitioner's trial counsel's affidavit makes clear that he believed such an instruction was "not warranted" because, in his view "Counts 2 through 5 each pertained to a specific time and place."

though the petitioner was convicted on all charges, it was "far from a 'mere possibility' on the totality of the criminal trial record" that some jurors were persuaded by evidence "as to one of the alleged incidents but not the other, or vice-versa, yielding an impermissible 'mix and match' verdict." *Id.*

This case presents the same impermissible risk, and it is on that point that we differ from the post-conviction court. The post-conviction court reasoned that petitioner was not prejudiced because "the four incidents of rape occurred at identifiably different times, and the jury showed that it could differentiate by finding petitioner [not guilty] on two counts." In our view, the fact that the jury was able to "differentiate" among "identifiably different" incidents simply does not bear on the question of whether ten jurors reached agreement on *the same* factual occurrence as a predicate for conviction on any one count. That is particularly significant given that the state of the trial record, as noted above, was not so crystal clear.

It is true that petitioner's defense to the counts concerning C boiled down to a credibility dispute, and he denied that all of the charged rapes occurred. Thus, petitioner did not present a "particularized defense" as to any of the "individual alleged factual scenarios." *Mellerio*, 279 Or App at 435. Nevertheless, here, the jury's decision to acquit on two of the four rape counts weighs, if anything, in favor of a finding of prejudice, as it shows that the jury did not fully credit all of the evidence against defendant. If not all of the jurors believed that all of the alleged rapes occurred, it was even more critical for them to understand the concurrence requirement to convict on any one count. In short, without a concurrence instruction, the most we can infer is that ten jurors believe that two rapes occurred; we cannot infer that ten of them agreed that the same two rapes occurred. That is sufficient to establish prejudice.

Reversed and remanded.