Submitted June 25, 2015, conviction for assault in the fourth degree reversed and remanded, otherwise affirmed September 21, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

PATRICK TRELANE TEAGUES,
*Defendant-Appellant.*

Lane County Circuit Court
221310543; A155051

383 P3d 320

Peter Gartlan, Chief Defender, and Rond Chananudech, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Susan Reid, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

## DUNCAN, P. J.

In this criminal case, the state charged defendant with fourth-degree assault, among other crimes. At trial, the state contended that the jury could convict defendant of the assault based either on evidence that defendant had caused the alleged victim to scrape her knee or on evidence that he had choked her. In response, defendant asserted that, because the state was arguing that the jury could convict him of assault based on either of two separate instances of conduct, the trial court had to either require the state to elect its theory on the assault count or instruct the jury that it had to agree on the occurrence that constituted the assault. The state argued against both the election and the instruction, and the trial court accepted the state's argument. The jury convicted defendant of the assault, and defendant appeals, assigning error to the trial court's failure to either require the state to elect its theory on the assault count or instruct the jury that it had to agree on the occurrence that constituted the assault.[1] As explained below, we conclude that, because the state charged defendant with a single count of fourth-degree assault but presented evidence of two separate occurrences, each of which would constitute fourth-degree assault, the trial court had to require an election or give a concurrence instruction. Because the trial court declined to require an election, it subsequently erred when it failed to instruct the jurors that they had to agree on the occurrence that constituted the assault. Consequently, we reverse and remand defendant's conviction for fourth-degree assault and otherwise affirm.

We begin with a statement of the procedural facts. The state charged defendant with fourth-degree assault, ORS

---

[1] Defendant raises four assignments of error. In his first assignment, he challenges the trial court's admission of hearsay statements, and, in his second assignment, he challenges the trial court's denial of his motion for judgment of acquittal on the assault count. We reject those assignments without written discussion. In his third assignment, defendant challenges the trial court's refusal to require the state to elect its theory on the assault count and, in his fourth assignment, he challenges the trial court's failure to give a concurrence instruction; defendant combines his argument on those related assignments, as does the state. Because the trial court did not require the state to elect its theory on the assault count, we focus on whether it subsequently erred by failing to give a concurrence instruction.

163.160 (Count 1); strangulation, ORS 163.187 (Count 2); and menacing, ORS 163.190 (Count 3), all constituting domestic violence, *see* ORS 132.586 (providing that the state may plead and prove "domestic violence as an element" of a crime). The alleged victim of the crimes was Walden, defendant's girlfriend at the time. Walden did not testify at trial. The state's primary witness was Lynum, who lived with defendant and Walden on the night of the charged crimes.

Lynum testified that, around midnight on June 4, 2013, he was awakened by the sounds of defendant and Walden arguing inside the house. Defendant and Walden then left the house and drove away, only to return within a few minutes. Lynum heard someone running up the driveway and a loud thud at the door. Lynum assumed the thud was "the front door slamming open." After that, Lynum heard defendant and Walden arguing inside the house. He stayed awake listening for a period of time, but eventually fell back asleep.

At some point later, Lynum was awakened by Walden, who burst into his room. She was screaming and crying, and she told Lynum that defendant had just choked her. She said, "He's crazy. He's trying to kill me. He just choked me." According to Lynum, defendant followed Walden and told her, "No, no, no. Tell him what really happened. That's not what happened. Tell him what happened."

Later, Lynum spoke to Walden on the patio, and she reported that defendant had "grabbed her by the throat and that she couldn't breathe. She couldn't break his grip." Lynum noticed that Walden's neck was red and many of her acrylic nails had broken off. According to Lynum, Walden's neck and nails had not looked that way earlier in the evening. Lynum also noticed that Walden's left knee was scraped and bloodied; it looked as if she had fallen on concrete or a sidewalk.

Lynum called 9-1-1, and an officer responded. The officer took photographs of Walden's neck, hands, and left knee, and the state introduced those photographs at trial.

At the conclusion of the state's case, defendant moved to require the state to elect a theory on the assault

count under *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), *cert den*, 510 US 1013 (1993). Defendant asserted that the state was proceeding on "two completely different theories for how [there] was an assault"—one based on the skinned knee being connected with the sounds Lynum heard from the driveway and front door, and the other based on the choking incident that Walden told Lynum had "just" happened when she later burst into his room—and, therefore, he argued, the trial court had to require the state to "elect a theory on the assault":

> "* * * I think that it is important when we have a jury making findings of fact, this is part of the issue with the *Boots*, with the election, with the theory. We need to know what the jury is determining these counts to be.
>
> "That's why I think it is imperative in a case like this the State elect one injury."

(Emphasis added.)

The state responded, "I don't believe that there's case law to support a *Boots*-type instruction or requiring the State to elect a theory. The jury is free to find either of those ways that he caused physical injury to Ms. Walden." The trial court questioned the state about proceeding on two different theories on the assault count:

> "THE COURT: Let me understand clearly. You're saying that the jury could decide based on the skinned knee alone that he committed an assault. And separate from that they could convict on the strangulation.
>
> "* * * * *
>
> "[STATE:] *I'm saying that—*
>
> "* * * * *
>
> "[STATE:] *—that the jury could find an assault based on the skinned knee— * * *.*
>
> "*The jury could also find an assault based on the fact that he caused her substantial pain by grabbing and squeezing her neck so hard that she couldn't breathe.* And holding it long enough and hard enough to cause that mark that's evidenced by the photograph * * *.

"Additionally they could find that he caused physical injury to her by impairing her ability to breathe. And so that was the physical injury.

"THE COURT:   Do you think that the skinned knee is a sufficient impairment all by itself to sustain—to meet the definition of physical injury in assault?

"[STATE:]   So there's case law that says impairment of physical condition can be an impairment of the skin's function. And by having a sufficient enough break in the skin to where one is bleeding *** it's impaired. *** So, yes, is the answer to your question."

(Emphasis added.) The trial court denied defendant's motion to require the state to elect a theory on the assault count.

During the presentation of his case, defendant testified that, on the night of the charged crimes, he and Walden had a disagreement about finances. She had his truck keys and agreed to give them back only if he would give her money. With Walden driving, they left the house to go to a nearby ATM, but when they got there, she refused to give him his keys and, in turn, he refused to get her cash. She drove home, ran up the driveway, and according to defendant, she fell while pushing the door open. Defendant began to pack his things, and Walden locked herself in her bedroom and searched through drawers. Defendant believed that she was looking for his money. Walden then went into Lynum's room and spoke to Lynum. Defendant testified that he did not hit or choke Walden; he testitified that he did not have a physical altercation with Walden.

In its closing argument, the state argued that the jury could find defendant guilty of fourth-degree assault based either on the evidence of the choking or on the evidence of the skinned knee:

"With respect to Assault in the Fourth Degree that the defendant knowingly caused physical injury to [Walden,] *** the law says physical injury is any time there's impairment of physical condition or substantial pain.

"* * * * *

"And so I think that you can arrive at physical injury two ways. Not just by impairment of physical condition,

the fact that defendant prevented her from being able to breathe, but also that he squeezed hard enough that this would have caused pain.

"Additionally we know that she was bleeding. She was bleeding as a result of the altercation from her knee. We heard that she wasn't bleeding earlier in the night. And we heard that blood was seeping through her white pants when [Lynum] saw her when she talked to officers that night.

"And so again, we have impairment of physical condition where the skin has broken to the point where she's now losing blood.

"So I submit to you there's at least three ways to get to physical injury in this case and that the state has established that beyond a reasonable doubt."

Thus, the state argued that the jury could find that defendant assaulted Walden (1) by choking her and, thereby, causing either impairment of her physical condition or substantial pain, or (2) by causing her to scrape her knee and, thereby, causing impairment of her physical condition.

The trial court instructed the jury that "each and every juror must agree on your verdict[,]" but it did not instruct the jurors that they had to agree on the occurrence that constituted the fourth-degree assault. After the court instructed the jury, defendant again raised the issue, noting that he was doing so "to preserve the *Boots* motion [he] made." The jury found defendant guilty as charged, and this appeal followed.

As mentioned, on appeal, defendant argues that the trial court had to either require the state to elect its theory on the fourth-degree assault count or instruct the jury that they had to agree on the occurrence that constituted the assault. Whether the trial court was required to do so is a question of law, which we review for legal error, viewing the evidence in support of the instruction in the light most favorable to defendant. *State v. Ashkins*, 357 Or 642, 648, 357 P3d 490 (2015) (whether a trial court errs by failing to give a jury concurrence instruction when the state has not elected a theory is a question of law); *State v. Oliphant*, 347 Or 175, 178, 218 P3d 1281 (2009) (generally, a jury instruction is

appropriate if it correctly states the law and is supported by evidence in the record, when the evidence supporting the giving of the instruction is viewed in the light most favorable to the party requesting the instruction).

At issue is defendant's conviction for fourth-degree assault in violation of ORS 163.160(1)(a), which provides that a person commits fourth-degree assault if the person "[i]ntentionally, knowingly, or recklessly causes physical injury to another[.]" As defined by ORS 163.160(1), fourth-degree assault has three elements: (1) a culpable mental state, (2) causation, and (3) physical injury. Here, the state alleged that defendant "did unlawfully and knowingly cause physical injury to [Walden]." "Physical injury" means "impairment of physical condition or substantial pain." ORS 161.015(7).

Under Article I, section 11, of the Oregon Constitution, the requisite number of jurors must "agree that the state has proved each legislatively defined element of a crime." *State v. Pipkin*, 354 Or 513, 527, 316 P3d 255 (2013); *Boots*, 308 Or at 380 ("'The unanimity rule * * * requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged.'" (Quoting *United States v. Gibson*, 553 F2d 453, 457-58 (5th Cir 1977).)); *State v. Houston*, 147 Or App 285, 292, 935 P2d 1242 (1997) (the requisite number of jurors must agree that "the defendant actually committed the acts that constitute the crime charged").[2] As we recently explained in *Mellerio v. Nooth*, 279 Or App 419, 429-30, 379 P3d 560 (2016),

> "That principle, which *may* have been implicit in *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), in which the court held that a trial court had erred in giving an instruction that jurors were *not* required to concur on aggravating

---

[2] Article I, section 11, provides, in part, "[I]n the circuit court ten members of the jury may render a verdict of guilty or not guilty save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict[.]" In this case, all of the charges against defendant were misdemeanors; consequently, his case was tried to a six-person jury. *See* Or Const, Art VII (Amended), § 9 ("Provision may be made by law for juries consisting of less than 12 but not less than six jurors."); ORS 136.210(2) ("In criminal cases in the circuit courts in which the only charges to be tried are misdemeanors, the trial jury shall consist of six persons.").

circumstances in an aggravated murder prosecution, *id.* at 379, evolved in subsequent cases in which the *'Boots'* rubric became synonymous with the asserted necessity of concurrence instructions in criminal cases. *See, e.g., State v. Ashkins,* 357 Or 642, 649-53, 357 P3d 490 (2015) (recounting history); *Pipkin,* 354 Or at 516-21 (same)."

(Emphasis in original; footnote omitted.) As the Supreme Court explained in *Pipkin,* 354 Or at 516, and we recounted in *Mellerio,* 279 Or App at 430, the *Boots* principle addresses "two conceptually distinct situations": (1) "when a statute defines one crime but specifies alternative ways in which that crime can be committed" and (2) when the indictment charges a single crime "but the evidence permits the jury to find multiple, separate occurrences of that crime." The second *Boots* situation is at issue in this case.

When the second situation is at issue, the trial court must either require the state to elect the occurrence on which it will proceed or instruct the jury that the requisite number of jurors must agree on one of the multiple occurrences. *Ashkins,* 357 Or at 659 (when the evidence regarding a single count permits "the jury to find any one or more among multiple, separate occurrences of that offense" and the state does not elect a particular occurrence, the trial court must give a concurrence instruction); *Houston,* 147 Or App at 293 (where the state charged the defendant with one count of delivery of a controlled substance, but presented evidence of multiple, separate deliveries, the trial court erred by failing either to require the state "to elect which of the separate occasions * * * was to be the basis for the jury's decision" or to instruct the jury "as to its obligation to base its decision on a single criminal act"). On this point, our recent decision in *Mellerio*—which, like this case, involved two occurrences on a single night—is illustrative.

In *Mellerio,* a post-conviction relief case, the petitioner alleged, as relevant here, that his trial counsel had failed to provide constitutionally adequate representation because, among other things, he failed to request concurrence instructions on two counts of coercion, specifically Counts 7 and 8. *See* ORS 163.275 (defining coercion). Count 7 alleged that the petitioner had unlawfully and knowingly compelled or induced one victim, Rife, "to abstain

from engaging in conduct in which she had a legal right to engage[.]" Count 8 alleged the same conduct, but named a different victim, Galbadon. In support of the counts, the state presented evidence that, at one point during the night of the charged crimes, the petitioner told the victims not to report his conduct to specific third parties, the Colemans, and that, at a later point in the night, the petitioner told the victims not to report his conduct to the police. As we explained, the evidence

"substantiated *two* \*\*\* instances in which petitioner had compelled Gabaldon to abstain from conduct in which she had a legal right to engage *viz.,* informing the Colemans of petitioner's conduct, and informing the police of petitioner's conduct) and *two* instances in which petitioner had compelled Rife to abstain from conduct in which she had a legal right to engage (again, informing the Colemans of petitioner's conduct, and informing the police of petitioner's conduct)."

279 Or App at 425 (emphasis in original).

On appeal, we observed that the two instances

"were temporally and spatially distinct, with the inter-action with the Colemans having ended before petitioner made threats about not informing the police, as he and [Galbadon and Rife] drove back to McMinnville, and they were predicated on different threats—the former, on the threat to kill the Colemans, and the latter, on the threats against the victims and their families."

*Id.* We held that, because the evidentiary record in the underlying criminal trial supported two "temporally, spatially, and substantively distinct occurrences" of coercion for each of the victims, *id.* at 432, the petitioner's trial counsel's failure to request concurrence instructions on Count 7 and Count 8 "constituted a failure to exercise reasonable professional skill and judgment[,]" *id.* at 431, and prejudiced the petitioner because, given the evidence presented, the jurors could have based their individual verdicts on different occurrences, *id.* at 435-36. *See also Wilson v. Premo,* 280 Or App 372, 384, 381 P3d 921 (2016) (where the indictment alleged multiple counts of rape in identical terms and the state presented evidence of multiple occurrences of rape, the state "should have been required to elect which factual occurrence

it was relying on for each count, or the jury should have been instructed that it had to agree on what factual occurrence formed the basis for conviction on a particular count").

Here, as in *Mellerio*, the count at issue charged defendant with a single crime, but the state presented evidence of multiple, separate occurrences of that crime. As the state itself argued to the trial court and the jury, it was proceeding on the two theories: (1) that defendant assaulted Walden by causing her to scrape her knee and (2) that defendant assaulted Walden by choking her. Those theories were based on evidence of two different actions, which occurred at different times and in different locations and resulted in different injuries. The state's theory regarding the skinned knee was that defendant caused Walden to fall near the door of the house, resulting in the loud thud Lynum heard and the injury to Walden's knee, which, according to Lynum, looked as if it had been caused by concrete or a sidewalk. The state's theory regarding the choking was that, sometime later—after Lynum had listened to defendant and Walden argue for a period of time and then fallen asleep—defendant choked Walden. Thus, as in *Mellerio*, the evidence substantiated two occurrences that were "temporally, spatially, and substantively distinct[.]" 279 Or App at 432. The occurrences were separated in time; after the first one, Lynum listened for a period of time and then fell asleep for an additional period of time before the second occurred. They took place in different locations; the first happened outside the house and the second happened inside the house. And, they involved different injuries.

Because the two occurrences were temporally and spatially distinct and involved different injuries, they gave rise to different factual questions for the jury to resolve in order to determine whether the state had proven the elements of assault. To determine whether the evidence of the first occurrence supported a guilty verdict on the assault count, the jury would have had to determine whether defendant actually caused Walden to fall and, if so, whether the injury to her knee constituted a physical injury for the purposes of the assault statute, that is, whether it impaired Walden's physical condition or caused her substantial pain. But, to determine whether the evidence of the second occurrence

supported a guilty verdict, the jury would have had to determine whether defendant actually choked Walden and, if so, whether, in doing so, he impaired her physical condition or caused her substantial pain. The factual issues relate to the elements of the charged assault. As in *Boots*, "We are not speaking here of factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or left hand. We deal with facts that the law (or the indictment) has made essential to a crime." 308 Or at 379. Consequently, the trial court had to either require the state to elect its theory or instruct the jury that it had to agree upon the factual occurrence that constituted the assault.

In arguing otherwise, the state asserts that "the evidence regarding the knee injury and the choking did not constitute multiple and separate occurrences of the crime charged." In support of that argument, the state relies on *State v. White*, 115 Or App 104, 838 P2d 605 (1992), but *White* is inapposite.

In *White*, the defendant was charged with menacing, which is defined by ORS 163.190, as the intentional attempt "to place another person in fear of imminent serious physical injury" by word or conduct. The state presented evidence that, during an argument with his neighbor, the defendant brandished a flashlight and then a gun at the neighbor. On appeal, we held that "[t]he gravamen of the crime [of menacing] is the intentional attempt to place another person in fear," and that the defendant "could have done several different acts and, if he intended thereby to attempt to place [the victim] in fear, would have committed menacing." 115 Or App at 107. In other words, the gravamen of that crime— instilling fear—allowed the state to rely on the defendant's entire course of conduct; the aggregate of which could have caused fear. Therefore, we reasoned that, "[t]he jury did not have to agree unanimously that he did any specific act that would cause fear in order to find him guilty of menacing." *Id.* at 107-08. *See State v. Greeley*, 220 Or App 19, 26, 184 P3d 1191 (2008) (holding, in a reckless driving case, that, "[a]s in *White*, the state was entitled to rely on the entire course of defendant's driving to establish the element of recklessness[,]" and, therefore, defendant's multiple dangerous passes of other vehicles during an episode of driving

that lasted no more than four minutes, did not constitute different occurrences of reckless driving). Here, the gravamen of the fourth-degree assault charge was the unlawful and knowing causation of physical injury. The state did not rely on one course of conduct establishing a single injury or a cluster of injuries; rather, it relied on two distinct instances of conduct by defendant, causing two distinct injuries. As such, *White* is inapplicable. *See Houston*, 147 Or App at 292 (where the state charged one count of delivery of a controlled substance but presented evidence of multiple deliveries, the case was "not a case like * * * *White*, in which the state merely offered alternative evidence of a single factual occurrence. Instead, it is like *Boots*, in that the jury was allowed to base its verdict on alternative factual occurrences, each of which itself would be a separate crime.").

The state also argues that, even if the knee injury and choking constitute separate occurrences, "a concurrence instruction or election would still be unnecessary because the knee injury and the choking did not differ as to any material fact." In support of that argument, the state relies on our decision in *State v. Ashkins*, 263 Or App 208, 222, 327 P3d 1191 (2014), where we stated that, in order to warrant a concurrence instruction, separate occurrences must differ "as to some factual element—such as the identities of the victim or the perpetrator—that is material or * * * essential to the crime." However, on review of our decision, the Supreme Court expressly rejected that proposition, instead, holding that, under *Pipkin*, the relevant inquiry "is not whether the fact on which jurors might fail to agree constituted a material element of an offense; the issue, rather, is whether jurors must agree on the same occurrence in reaching a verdict on a single count of a charged crime." *Ashkins*, 357 Or at 659. When an indictment charges a single offense "but the evidence permit[s] the jury to find any one or more among multiple, separate occurrences of that offense involving the same victim and the same perpetrator[,]" the jury must concur as to which occurrence constitutes the offense. *Id.* As described, in this case the state charged defendant with one count of fourth-degree assault, but proceeded on two theories, based on different occurrences, each of which would have constituted a separate crime. Consequently, because

the trial court did not require the state to elect its theory on the assault count, it subsequently erred by failing to give a concurrence instruction.

Finally, we conclude that the trial court's error was not harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (error is harmless when there is little likelihood that it affected the verdict). A trial court's erroneous failure to give a concurrence instruction is not harmless when, given the evidence and the parties' theories, jurors could have based their verdicts on different occurrences. *See Wilson*, 280 Or App at 387 (petitioner was prejudiced by trial counsel's failure to request a concurrence instruction where the jurors may not have based their verdicts on the same occurrences); *Mellerio*, 279 Or App at 436 (trial counsel's failure to request concurrence instruction was prejudicial where individual jurors could have been persuaded by the state's evidence "as to one of the alleged incidents, but not the other, or vice-versa, yielding an impermissible 'mix-and-match' verdict").

In this case, given the evidence presented and the parties' arguments, jurors could have reached different conclusions regarding the two occurrences. For example, some jurors might have accepted the state's theory of assault based on Walden's skinned knee, while others might have found that the state failed to prove that defendant caused the skinned knee, given that defendant testified that Walden simply fell and there was no evidence regarding any particular action by defendant that could have caused the skinned knee. Meanwhile, some jurors might have accepted the state's theory of assault based on the evidence of defendant's choking of Walden, while others could have rejected it, given the lack of evidence regarding the length of any impairment of physical condition and the amount of any pain. *See State v. Hendricks*, 273 Or App 1, 11-12, 359 P3d 294 (2015), *rev den*, 358 Or 794 (2016) (whether an action has resulted in "impairment of physical condition" depends on "case-specific circumstances"; "[t]he nature of the affected bodily function or organ, the degree of effect, and its duration may all properly bear on the assessment of legally sufficient impairment"); *State v. Rennells*, 253 Or App 580, 586, 291 P3d 177 (2012), *rev den*, 353 Or 410 (2013) (evidence of bruising

was insufficient to support an inference that the victim had suffered substantial pain). Therefore, we must reverse and remand defendant's fourth-degree assault conviction.

Conviction for assault in the fourth degree reversed and remanded; otherwise affirmed.