Argued and submitted March 26, 2019, reversed and remanded June 3, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TANYA FAITH ROLFE,
*Defendant-Appellant.*

Benton County Circuit Court
16CR32503; A165455

468 P3d 503

At the start of defendant's jury trial for violating a stalking protective order (SPO), ORS 163.750, the state's theory of the case was that defendant sent the victim a message two days after being served notice of the SPO. Defendant testified that she sent the message before receiving notice, and defense counsel argued in closing that the jury should acquit for that reason. Then, during rebuttal, the state argued that, even if defendant sent the message prior to being notified of the order, defendant violated ORS 163.750 by not withdrawing the message after she was served with notice of the SPO. On appeal, defendant contends that, among other things, the trial court plainly erred in failing to *sua sponte* instruct the jury that it needed to concur on whether defendant committed the crime through the act of sending the message after being served with notice or, instead, through the omission of failing to withdraw the previously sent message after receiving notice. *Held*: The trial court plainly erred in failing to *sua sponte* issue a concurrence instruction. Under *State v. Boots*, 308 Or 371, 380, 780 P2d 725 (1989), the unanimous jury requirement imposes a "prerequisite of jury consensus as to the defendant's course of action."

Reversed and remanded.

Matthew J. Donohue, Judge.

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Kirsten M. Naito, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

At the start of defendant's jury trial for the misdemeanor of violating a stalking protective order (SPO), ORS 163.750, the state's theory of the case was that defendant sent the victim, B, a message two days after being served notice of the SPO. After defendant testified that she sent the message before receiving notice, and defense counsel argued in closing that the jury should acquit for that reason, the state added a new theory of how defendant committed the crime. During its rebuttal closing argument, the state argued that, even if defendant sent the message prior to being notified of the order, defendant violated ORS 163.750 by not withdrawing the message after she was served with notice of the SPO. On appeal, defendant contends that, among other things, the trial court plainly erred in failing to *sua sponte* instruct the jury that it needed to concur on whether defendant committed the crime through the act of sending the message after being served with notice or, instead, through the omission of failing to withdraw the previously sent message after receiving notice. Because we agree with defendant on that point, we reverse and remand. This disposition obviates the need to address defendant's remaining assignments of error.

The relevant facts are procedural in nature. Defendant and B had an affair. B ended it after defendant told B's wife about the affair. He explained to defendant that he did not want any more contact with her. Defendant nevertheless continued to attempt to contact B and his 14-year-old daughter, L, by phone and through Facebook. Defendant gave L several phones over the course of six months, and, on several occasions, defendant and L spoke on the phone. In each instance that B discovered a phone from defendant in L's possession, he gave it to the Benton County Sheriff's Department.

On May 14, 2016, B awoke to discover that L was missing from her bedroom. L had run away and was found at defendant's house.

B filed for a temporary SPO, and defendant was served notice of the SPO on May 17, 2016. Two days later, B found another iPhone that defendant had given L and put it in his closet while he waited for the police to take it. While

waiting, he "heard it buzzing or making some * * * noise," so he looked at it and saw a message requesting that the phone be returned to the owner, listing defendant's phone number as the contact number. Later that evening, another message showed up on the phone:

> "Text email facebook me how delivery will occur This is an emergency loaner phone don't shoot it or harm device this is intended for emergency help [defendant's phone number.]"

B called the police, and defendant was charged by information with violating an SPO, ORS 163.750.

Defendant exercised her right to a jury trial. At trial, the state based its case on the second message. Defendant testified that she wrote the message, but that she sent it before service of notice of the SPO. She explained that the application she used to send the message would have left the message on the phone "until the code is either put through or you can go to iCloud and you can remove the lock, and I never did any of that." During closing arguments, defendant argued that ORS 163.750 prohibited only conduct that happened after she had been served with notice of the SPO; therefore, because defendant wrote and sent the message before she was notified of the SPO, the state had failed to meet its burden of proof. Responding to that argument on rebuttal, the state argued for the first time that, even if defendant sent the message before being served with the SPO, she violated the order by not withdrawing the message:

> "I would ask that you consider one more thing. If the defense argument is to hold water, that that text message was somehow sent once before—
>
> "* * * * *
>
> "That would give us with the quandary what if one sets up a system where you can send a threatening email or a text or whatever to someone, let's say every 72 hours, I don't care how you do it, let's say you do it by sky writing, it doesn't matter, just every 72 hours a threatening message is going to be sent. When you're served with a temporary stalking protective order you must cease all communication. Cease all communication, so if you've already set those in motion, and this is just if you believe that theory, you must cease all those in motion."

Defendant did not object to the state's new theory of criminal liability—that she violated ORS 163.750 by sending a message before service of the SPO and then not taking steps to "cease all those [communications] in motion"—and the trial court did not instruct the jury that it needed to concur on whether defendant committed the offense by (1) sending the message before receiving notice of the SPO and omitting to withdraw it or (2) by sending it after being notified of the SPO. The six-person jury returned a verdict of guilty.

Defendant appeals, arguing that Article I, section 11, of the Oregon Constitution requires trial courts to give a concurrence instruction when circumstances suggest that a jury could find a defendant guilty of a single offense based on separate factual occurrences. She contends, among other things, that the trial court plainly erred in failing to do so here and requests that we exercise our discretion to correct the error. In response, the state contends that the court did not plainly err. It argues that a concurrence instruction *would* have been required if the record could have supported finding multiple occurrences of the same crime but, because there was only one message at issue, it is not obvious that defendant was entitled to the instruction under the circumstances here, notwithstanding the state's distinct act and omission theories of criminal liability.

In Oregon, six-person jury verdicts must be unanimous to support a conviction.[1] *See State v. Sagdal*, 258 Or App 890, 896, 311 P3d 941 (2013), *aff'd*, 356 Or 639, 343 P3d 226 (2015); *State v. Greeley*, 220 Or App 19, 23 n 3, 184 P3d 1191 (2008). That unanimity requirement means that a jury must agree on more than just a defendant's guilt. It also must agree on "just what a defendant did":

---

[1] Under the Sixth Amendment to the United States Constitution, jury verdicts for felony convictions must also be unanimous. *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). Violating an SPO, however, is a misdemeanor, which, under Oregon law, requires a unanimous conviction by a jury of six. *See* ORS 163.750(2)(a); ORS 136.210. We therefore proceed under state law. As for whether the United States Supreme Court's decision in *Ramos* renders unlawful portions of our case law that allowed less than unanimous verdicts, our conclusions on the *issues* that require concurrence instructions remain sound. *See State v. Stowell*, 304 Or App 1, 5 n 1, 466 P3d 1009 (2020) (noting that, though needing only 10 jurors to concur is no longer good law in light of *Ramos*, our conclusions on where jury concurrence instructions are required remain sound).

> "The unanimity rule \* \* \* requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged. Requiring the vote of twelve jurors to convict a defendant does little to insure that his right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required."

*State v. Boots*, 308 Or 371, 380-81, 780 P2d 725 (1989) (quoting *United States v. Gipson*, 553 F2d 453, 457-58 (5th Cir 1977)); *see also State v. Lotches*, 331 Or 455, 468-69, 17 P3d 1045 (2000) ("[T]he unanimity rule requires that the jury agree as to 'just what defendant did' to bring himself within the purview of the particular subsection of the aggravated murder statute under which he was charged.").

　　　　To ensure that this requirement is met in cases in which the evidence gives rise to the risk that jurors could have differing views on "just what a defendant did" to commit a charged offense, the jury must be given a concurrence instruction, that is, "a jury must be instructed concerning the necessity of agreement on all material elements of a charge in order to convict." *Lotches*, 331 Or at 472. Whether a trial court errs by failing to give a jury concurrence instruction is a question of law. *State v. Teagues*, 281 Or App 182, 187-88, 383 P3d 320 (2016) (citing *State v. Ashkins*, 357 Or 642, 648, 357 P3d 490 (2015)).

　　　　Oregon distinguishes two types of situations requiring a concurrence instruction: (1) "when a statute defines one crime but specifies alternative ways in which that crime can be committed" and (2) "when the indictment charges a single violation of a crime but the evidence permits the jury to find multiple, separate occurrences of that crime." *State v. Pipkin*, 354 Or 513, 516-17, 316 P3d 255 (2013). In the second situation—the situation that defendant argues this case presents—where a defendant is charged with a single occurrence of an offense but the evidence would allow the jury to find "any one or more among multiple, separate occurrences of that offense involving the same victim and the same perpetrator," either the state must elect what occurrence it is relying on or the trial court must deliver a concurrence instruction. *Ashkins*, 357 Or at 659.

We begin with the foundational case on this issue, *Boots*. There, the defendant was tried for aggravated murder on two different factual theories: One was that the murder was committed in the course of a robbery, and the other was that it was committed to conceal the identity of the robbers. *Boots*, 308 Or at 373-74. The defendant was convicted after the trial court instructed the jury that "[a]ny combination of twelve jurors agreeing that one [factual theory] or the other or both occurs is sufficient to establish this offense." *Id*. at 375. On review, the Supreme Court began by noting that the factual findings required for conviction under either alternative were different—a defendant could murder someone during a robbery without attempting to conceal his identity or murder someone to conceal the identity of a robber without participating in the robbery. *Id*. The court summarized the problem: "In short, the instruction relieves the jury from seriously confronting the question whether they agree that any factual requirement of aggravated murder has been proved beyond a reasonable doubt, so long as each juror is willing to pick one theory or another." *Id*.

The state argued that jurors should not have to "unanimously choose beyond a reasonable doubt which of several alternate ways the defendant actually participated, even though all agree that he was, in fact, a participant." *Id*. at 378-79. The court rejected that argument, concluding that concurrence is required as to what factually a defendant did to commit a charged offense:

> "[T]he question [is not] whether a jury could 'choose' between different ways in which a defendant participated in the crime. It is not a matter of 'choosing' but of fact-finding. If more than one way is charged and proved to the jury's unanimous satisfaction, the jury need not 'choose' and there is no difficulty. The problem arises precisely when none of the alternative ways has been proved to the satisfaction of all jurors, when one or more jurors is in doubt about each of the alternatives charged. We are not speaking here of factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or the left hand. We deal with facts that the law (or the indictment) has made essential to a crime."

*Id*. at 379. In other words, the unanimous jury requirement imposes a "prerequisite of jury consensus as to the defendant's course of action." *Id*. at 380.

*Boots* makes it plain that a concurrence instruction was required in this case, in view of the state's factually distinct act and omission theories. To prove that defendant committed the crime with which she was charged, the state was required to prove (among other things) that defendant engaged in conduct violating the SPO after she was served with the SPO and that she had the requisite mental state at the time that she engaged in that conduct, that is, that defendant, "subsequent to the service of the order, has engaged intentionally, knowingly or recklessly in conduct prohibited by the order." ORS 163.750(1)(b). To prove that element, the state posited that the evidence would allow the jury to find that defendant violated that provision in two, factually distinct ways: (1) by affirmatively sending the message after she had been served with the SPO; and (2) by failing to withdraw, after service of the order, any previously sent message. To ensure that the jury unanimously reached a "subjective state of certitude" about whether defendant committed the crime through the affirmative act of sending the message after being served or, instead, through the separate passive omission of not withdrawing the previously sent message after receiving notice, a concurrence instruction was required. *See Boots*, 308 Or at 380. That fundamental difference in how and when the defendant may have acted to violate the SPO is precisely the type of factfinding that a concurrence instruction is meant to focus the jury on in order to ensure unanimity. *See id*. at 379 ("The problem arises precisely when none of the alternative ways has been proved to the satisfaction of all jurors, when one or more jurors is in doubt about each of the alternatives charged.").[2] Thus, under *Boots*, the trial court erred in

[2] We note that the absence of an instruction requiring the jury to concur on what conduct defendant engaged in to violate the statute—that is, whether defendant violated the statute by sending a message after she was served with the SPO or, instead, by not withdrawing previously sent messages after service of the SPO—creates a risk that the jury also may not have been unanimous as to whether defendant engaged in that conduct with the requisite mental state. On this record, a juror finding that defendant violated the statute by sending the message after service of the SPO would have a pretty easy time finding that

failing to instruct the jury that it needed to concur on the material facts showing that, "subsequent to the service of the order," defendant engaged "in conduct prohibited by the order," ORS 163.750(1)(b), and we think that error is a plain one in view of *Boots* and *Ashkins*. *See State v. Slaviak*, 296 Or App 805, 810-11, 440 P3d 114 (2019) (trial court plainly erred in not delivering concurrence instruction where evidence at trial permitted jury to pick among different, separate factual occurrences of the charged offense involving a single perpetrator and a single victim).

Contesting this conclusion, the state argues that, "[i]n the cases that defendant cites as presenting multiple occurrences of the charged crime, the need for a concurrence instruction arose because the record would have allowed multiple convictions of the charged crime, but the state had charged only a single count." Indeed, many cases describe the scenario requiring a concurrence instruction as "when the indictment charges a single violation of a crime but the evidence permits the jury to find multiple, separate occurrences of that crime." *Pipkin*, 354 Or at 517; *see also Ashkins*, 357 Or at 649 (using "multiple, separate occurrences" wording); *Teagues*, 281 Or App at 189 (same). And, to be sure, the need for concurrence instructions often arises in that context. But, under *Boots*, we do not understand that to be the only context in which a concurrence instruction is required, and we do not understand our Supreme Court to have strayed from the fundamental *Boots* principle: "[A] jury must be instructed on 'the necessity of agreement on all material elements of a charge in order to convict,'" including the necessity of agreement on what, exactly, the defendant did factually to commit the crime. *State v. Sparks*, 336 Or 298, 315, 83 P3d 304 (2004) (quoting *Lotches*, 331 Or at 472); *see also Boots*, 308 Or at 379 (requiring that jurors agree on the "facts that the law *** has made essential to a crime").[3]

defendant knowingly was engaging in conduct prohibited by the order. A juror finding that defendant had sent the message before service but then failed to withdraw it would have a much harder call on the mental state element for a number of reasons, including that it might not be readily apparent from the terms of the SPO that failing to withdraw previously sent messages was conduct prohibited by the order.

[3] The state also asserts that its two theories at trial were "interchangeable" and "overlapping," comparing this case to *Pipkin*, where the Supreme Court

As to whether we should exercise our discretion to correct the trial court's plain error in failing to deliver a concurrence instruction, defendant relies on *State v. Sippel*, 288 Or App 391, 406 P3d 207 (2017). As in this case, the state in *Sippel* introduced a second factual theory of liability for the first time in its rebuttal closing argument, the trial court failed to issue a jury concurrence instruction, and the defendant was found guilty. *Id.* at 392. On appeal, the defendant argued that not issuing a concurrence instruction created the risk that the defendant "would be convicted without the requisite number of [the jury's] members agreeing on what conduct actually constituted the offense." *Id.* at 393. The state conceded the point, and we agreed, concluding that the trial court's "failure to give the necessary concurrence instruction—even in the absence of a request by defendant for such an instruction—was plainly erroneous." *Id.* at 394. We exercised our discretion to correct the error, explaining that "there was no plausible strategic reason for the failure to request the instruction and this court was not persuaded that a sufficient number of jurors concurred on a single theory of liability." *Id.* (citing *State v. Bowen*, 280 Or App 514, 535-36, 380 P3d 1054 (2016)).

For reasons similar to those articulated in *Sippel* and also in *Slaviak*, 296 Or App at 815, we conclude that we should exercise our discretion to correct the plain *Boots* error here. In particular, we do so because the record evidences a genuine risk that the jury did not unanimously agree as to what, factually, defendant did to commit the charged offense, in violation of her right to unanimity on that point.

Reversed and remanded.

---

concluded that entering and remaining unlawfully were not separate elements in burglary. *Pipkin*, 354 Or at 523-24. However, the state acknowledges that that scenario is not what defendant is arguing in this case, and it does not otherwise contend that the statute at issue here "specifies alternative ways in which that crime can be committed." *Id.* at 516-17.