Submitted September 3, 2020; reversed and remanded as to petitioner's first assignment of error, otherwise affirmed June 8, 2022

EMMANUEL GARCIA TENORIO,
*Petitioner-Appellant,*

*v.*

Troy BOWSER,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV151107; A168082

513 P3d 1

Petitioner appeals a judgment denying his petition for post-conviction relief from his convictions for first-degree sexual abuse and first degree unlawful sexual penetration. He raises 10 assignments of error. As to his first assignment of error, petitioner argues that he received constitutionally inadequate and ineffective assistance of trial counsel because his attorney failed to request a jury-concurrence instruction, and that the post-conviction court erred in concluding that he had not been prejudiced as a result. Petitioner contends that the evidence at trial could have permitted the jury to rely on more than one factual occurrence of each alleged offense in rendering its guilty verdicts. *Held*: The post-conviction court erred. Accepting the post-conviction court's conclusion that trial counsel had performed deficiently, the Court of Appeals concluded that counsel's decision not to request a jury-concurrence instruction was prejudicial to petitioner because there was more than a mere possibility that some jurors voted to convict petitioner based on one alleged occurrence of conduct, while a similar subset of jurors voted to convict based on another. The Court of Appeals summarily rejected petitioner's remaining assignments of error.

Reversed and remanded as to petitioner's first assignment of error; otherwise affirmed.

J. Burdette Pratt, Senior Judge.

Harrison Latto filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeHoog, Judge pro tempore.

DeHOOG, J. pro tempore.

Reversed and remanded as to petitioner's first assignment of error; otherwise affirmed.

**DeHOOG, J. pro tempore**

In 2013, a jury found petitioner guilty of two counts of first-degree sexual abuse, ORS 163.427, and two counts of first-degree unlawful sexual penetration, ORS 163.411.[1] Petitioner's charges arose from allegations that he had sexually assaulted his stepdaughter, Z, who was six or seven years old at the time. Following an unsuccessful direct appeal of his convictions, petitioner sought post-conviction relief, asserting that in various ways the performance of his trial counsel had been constitutionally inadequate and ineffective under the state and federal constitutions. The post-conviction court denied each of petitioner's claims for relief, and petitioner now appeals that denial.

Petitioner's briefing raises 10 challenges to the post-conviction court's rulings. All 10 assignments of error, the last nine of which petitioner advances *pro se*, assert that the post-conviction court erred in denying his claims regarding his trial attorney's performance. As we explain below, petitioner's last nine assignments require limited discussion, and we ultimately reject them all. As to petitioner's first assignment of error, however, which relates to trial counsel's failure to request a jury-concurrence instruction, we conclude that the post-conviction court erroneously held that petitioner had not established that his trial attorney's concededly deficient performance in that regard had been prejudicial to him. We therefore reverse and remand as to the first assignment of error, but otherwise affirm.

We review post-conviction proceedings for errors of law. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). We are bound by the post-conviction court's historical findings of fact if there is evidence in the record to support them. *Id*. "If the post-conviction court failed to make findings of fact on all the issues—and there is evidence from which such facts could be decided more than one way—we will presume that the facts were decided consistently with the post-conviction court's conclusions of law." *Id*. We describe the factual and procedural history of petitioner's criminal and post-conviction cases in accordance with those standards.

---

[1] The trial court merged the guilty verdicts on each of the first-degree sexual abuse charges with the corresponding counts of unlawful sexual penetration.

At petitioner's underlying criminal trial, the evidence of sexual abuse came primarily through the testimony and recorded statements of petitioner's stepdaughter, Z. Z was approximately eight-and-a-half years old at the time of trial. Z testified that, at the time of the charged offenses a year or two earlier, petitioner was married to Z's mother, Penny, and petitioner lived with Penny, Z, and Z's siblings and half-siblings. In telling the jury what petitioner had done to her, Z indicated that, on more than one occasion, petitioner had entered her bedroom late at night, undressed her, and touched and put his fingers in both her front and back "private parts." On at least one occasion, Z testified, petitioner had "put his private part on [her] tummy." Z also testified that petitioner had "put some kind of cream *** inside [her] private part" and that she had struggled to wash it off the next morning, which the prosecutor later argued could support the inference that petitioner had ejaculated on her.

Z testified that the abuse had occurred four separate times, stating that, "[s]ome of them were when I was a baby and some of them when I was seven." After further questioning, Z clarified that the abuse had occurred twice during the charged time frame.[2] In response to the prosecutor's questioning about petitioner coming in and touching her on "those two nights," Z testified that her mother had been "in the bedroom watching TV," but indicated that no other adults had been present when it happened.

Despite Z's indication that no other adults would have witnessed the abuse, the jury heard from a third adult, C, who described concerning circumstances that she had observed one night while staying at petitioner's home. C, who at the time was dating Z's maternal uncle (Thurston), testified that she and Thurston had spent the night there several times. On one of those occasions, C, Thurston, and Z were all asleep in the living room, with C and Thurston sleeping on the floor and Z sleeping on her "little bed."[3]

---

[2] The jury also was shown a video recording of a forensic interview in which Z apparently referred to two instances of sexual contact by petitioner. However, neither the video nor a transcript of its contents is in the post-conviction record.

[3] Z had separately described a little "princess bed" that she used to sleep on the floor in her bedroom when someone else used her regular bed.

C awoke and saw petitioner kneeling next to Z's bed, where he remained for 30 to 45 minutes. According to C, she had been too frightened to react at the time because she was "terrified from a previous thing that had happened." Once petitioner left the room, however, C got up to check on Z and found her completely undressed and uncovered on her bed, with her clothes and blanket "stacked almost folded" next to her.[4]

In closing, the prosecutor summarized Z's testimony, together with statements that she had made during a forensic interview and to various lay and law-enforcement witnesses, as conveying the following facts:

> "The [d]efendant came into her bedroom. He pulled off her shirt and pulled off her panties, and then touched her on what she called her 'pee-pee,' or her vagina, and then touched her on her butt. She went on to say that [d]efendant also put his finger in her vagina and in her butt."

The prosecutor further summarized what Z had said about petitioner putting his penis on her, as well as what she had said about petitioner putting something "warm [and] sticky" on her belly, which had been "flaky [and] dried on" in the morning. As noted, the prosecutor argued that the latter testimony could support an inference that petitioner had ejaculated and therefore must have acted with a sexual purpose.

Notably, in the prosecutor's initial closing argument, he stated that,

> "based on the evidence, you would be well within your right to infer that this little girl's been sexually abused since she was three years old, and continually when [petitioner] had access."

In his rebuttal argument, however, the prosecutor clarified that the charged offenses did not encompass such a broad range of conduct. Rather, the prosecutor explained:

---

[4] Petitioner's trial counsel objected to C's testimony on the ground that, because C was the alleged victim of other charges against petitioner that had been severed for trial, counsel could not effectively cross-examine her. The trial court overruled that objection without substantially engaging counsel's rationale, instead reasoning that C's testimony was relevant.

"She told you what happened: the [d]efendant put his finger into her vagina[;] he put his finger into her butt. He did it on two separate occasions she described. And at least on one of those occasions, he ejaculated on her[,] leaving a poor seven-year old to try to wash that off the next morning."

For his part, trial counsel did not argue the timing, number, or other specifics of the alleged occurrences. Rather, his focus was on the required elements of the alleged offenses—such as whether there was proof beyond a reasonable doubt of actual penetration or that petitioner had acted with the requisite mental state—and on circumstances that, in counsel's view, warranted distrusting *any* allegations by Z. Those circumstances included purported flaws in the investigation, the fact that an earlier investigation into allegations by Z (the abuse alleged to have occurred when she was three years old) had led to a finding of "unfounded," and the fact that Z was "a little girl *** susceptible to parental influence" whose biological father was in a heated custody dispute with Z's mother, Penny.

As noted, the jury found petitioner guilty of all four counts involving Z, and the trial court merged the sexual-abuse charges into petitioner's convictions for first-degree unlawful sexual penetration. At least one aspect of petitioner's sentencing hearing appears to bear on petitioner's first assignment of error. At sentencing, the trial court also considered petitioner's *pro se* argument that, in addition to other arguments that counsel had previously made in support of a motion for new trial, the court should grant a new trial because C should not have been permitted to testify. In petitioner's view, C's testimony related only to a separate incident for which he had not been charged. Specifically, because the charges at issue involved conduct alleged to have occurred in Z's bedroom, whereas C's testimony related only to conduct alleged to have occurred in the living room, her testimony, petitioner argued, was both irrelevant and prejudicial.[5]

---

[5] C also was the alleged victim of other charges that were joined in the indictment with the charges involving Z, but the charges involving C had been severed from those involving Z before the trial at issue in this case.

In rejecting that argument, the trial court reasoned as follows:

"My memory of [C's] testimony is that she saw you engaging in conduct which could or could not be, depending on the jury's view, but I would assume that they thought that was an incident of sex abuse.

"I heard no testimony that would lead me to believe that was not one of the incidents. I guess that's up for argument, but that's the way I heard the evidence."

The trial court alternatively reasoned that,

"[I]f the evidence is[,] is that you are sexually abusing a little girl and there's evidence that you have [previously] abused that same little girl sexually, I think that leads to motive, opportunity, intent, and all those things that would make you guilty of the ones that were charged if I'm wrong in that these were separate and distinct episodes."

We affirmed the resulting convictions on direct appeal without written opinion. *State v. Tenorio*, 264 Or App 466, 332 P3d 371 (2014), *rev den*, 356 Or 685 (2015). In the ensuing post-conviction proceeding, petitioner asserted, among other things, that constitutionally adequate and effective trial counsel would have requested a jury-concurrence instruction because the evidence at trial could have permitted the jury to rely on more than one factual occurrence of each alleged offense in rendering its guilty verdicts. The post-conviction court agreed with petitioner that trial counsel's failure to request a jury-concurrence instruction reflected an absence of reasonable professional skill and judgment. The court concluded, however, that petitioner had not shown that he had suffered prejudice as a result of his trial attorney's deficient performance. As to petitioner's remaining claims, the post-conviction court concluded that he had not established that his attorney had provided inadequate assistance or that he had been prejudiced by any such shortcomings in counsel's representation. This appeal followed.

The general principles governing petitioner's assistance-of-counsel related claims are well settled. Both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution protect

a criminal defendant's right to counsel. *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014). The Oregon Supreme Court has recognized that "the standards for determining the adequacy of legal counsel under the state constitution are functionally equivalent to those for determining the effectiveness of counsel under the federal constitution." *Id.* Both constitutions provide a right "'not just to a lawyer in name only, but to a lawyer who provides *adequate* assistance.'" *Id.* at 6 (quoting *State v. Smith*, 339 Or 515, 526, 123 P3d 261 (2005) (emphasis added)). Accordingly, a petitioner may raise a challenge to the constitutional adequacy of his or her counsel's assistance on post-conviction review. *See* ORS 138.530(1)(a). "To prevail on a post-conviction claim of inadequate assistance of counsel, the burden is on the petitioner to show, by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that the petitioner suffered prejudice as a result." *Lambert v. Palmateer*, 182 Or App 130, 135, 47 P3d 907 (2002), *adh'd to as modified on recons*, 187 Or App 528, 69 P3d 725, *rev den*, 336 Or 125 (2003).

The law governing petitioner's first assignment of error is similarly settled, though its application may vary. As he did in his petition for post-conviction relief, petitioner contends in his first assignment of error that his trial attorney provided inadequate assistance when he failed to request a jury-concurrence instruction. Petitioner argues that a jury-concurrence instruction, also known as a "*Boots*" instruction, was required here because there was evidence presented at his trial of more than one episode of sexual abuse, and the prosecutor did not make an election as to which episode or episodes resulted in and constituted the charged, criminal conduct. *See State v. Boots*, 308 Or 371, 376-79, 780 P2d 725 (1989), *cert den*, 510 US 1013 (1993) (explaining necessity of jury concurrence on the material elements of a crime).

"The right to jury concurrence arises from Article I, Section 11, of the Oregon Constitution." *State v. Payne (A163092)*, 298 Or App 411, 421, 447 P3d 515 (2019). Under Article I, section 11, "to return a verdict of guilty, the requisite number of jurors must 'agree that the state has proved

each legislatively defined element of a crime.'" *Mellerio v. Nooth*, 279 Or App 419, 429, 379 P3d 560 (2016), *rev den*, 361 Or 803 (2017) (quoting *State v. Pipkin*, 354 Or 513, 527, 316 P3d 255 (2013)). There are two situations in which special measures may be necessary to ensure jury concurrence. "One situation occurs when a statute defines one crime but specifies alternative ways in which that crime can be committed." *Pipkin*, 354 Or at 516. The other situation occurs when the state charges a defendant with a single violation of a crime, "but the evidence permits the jury to find multiple, separate occurrences of that crime." *Id.* at 517. In the second situation, "the jury must concur as to which occurrence constitutes the offense." *State v. Teagues*, 281 Or App 182, 193, 383 P3d 320 (2016). In that situation, "a trial court has three primary tools at its disposal to ensure a jury bases its verdict on a discrete factual situation: a jury instruction, a statement of issues, or a verdict form." *Payne (A163092)*, 298 Or App at 422.

Petitioner's argument implicates the second situation in which a special instruction may be necessary to ensure jury concurrence. As noted, petitioner's principal contention is that, because the evidence at trial described multiple episodes of sexual abuse and the prosecutor did not make an election as to which episode or episodes constituted the charged, criminal conduct, all reasonable counsel would have requested a jury-concurrence instruction.[6] The post-conviction court agreed with petitioner in that regard. As the court explained in its ruling on petitioner's first claim for post-conviction relief:

> "[Z] testified that [p]etitioner touched and penetrated her anus and vagina on two separate occasions. The first occasion was described in some detail by [Z]. Petitioner, however, was charged with only two counts of Unlawful Sexual Penetration, once involving the anus and once involving the vagina. The prosecutor did not make an election regarding the two events."

---

[6] Petitioner also argues that a jury-concurrence instruction was required because the charged offense of unlawful sexual penetration could be committed in alternative ways. However, that argument is not well taken in this case, because the charging instrument specified the material elements that the state was required to prove, and the jury instructions that the trial court provided included those elements.

Citing *Pipkin*, the post-conviction court concluded that, under those circumstances, petitioner had "prove[d] that his trial attorney failed to exercise reasonable professional skill and judgment in failing to request a *Boots* instruction." That is, because the state had charged single crimes but presented sufficient evidence for the jury to find multiple, separate occurrences of the charged crimes, petitioner had been entitled to a jury-concurrence instruction, at least in the absence of an election by the state.

As noted, however, the post-conviction court found that petitioner had not established that the absence of such an instruction prejudiced his right to a fair trial. As to that point, the court reasoned:

> "In this case, it is evident from the record that both the parties were proceeding on the basis that the first occurrence[,] which was described in some detail[,] was the event that both parties were focusing on. This was the focus of both parties during the arguments. There is no evidence that if the jury had been given the concurrence instruction *** the jury would have reached a different result."

In light of its conclusion that petitioner had not shown that his attorney's failure to request a jury-concurrence instruction had any tendency to affect the outcome of his trial, the post-conviction court denied the first claim for relief.

Petitioner now challenges the post-conviction court's ruling that his trial attorney's failure to request a *Boots* instruction was not prejudicial. Taking no issue with the post-conviction court's conclusion that trial counsel's performance was deficient in that regard, the superintendent simply defends the post-conviction court's prejudice ruling. In light of that narrowing of the issues on appeal, we similarly focus our discussion of petitioner's first assignment of error on the issue of prejudice.

As the post-conviction court recognized, a claim of inadequate or ineffective assistance of counsel requires a showing of prejudice. *See Lambert*, 182 Or App at 135 (a petitioner must show both deficient performance *and* prejudice to prevail). To demonstrate prejudice, a petitioner must show that "'counsel's failure had a tendency to affect the result of his trial.'" *Montez*, 355 Or at 7 (quoting *Lichau v.*

*Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002)). Although petitioner does not dispute that burden, he gleans from our case law and that of the Supreme Court what he characterizes as "more of a rebuttable presumption" of prejudice arising from counsel's failure to request a jury-concurrence instruction. In particular, petitioner cites the Supreme Court's decisions in *State v. Hale*, 335 Or 612, 75 P3d 448 (2003), and *State v. Lotches*, 331 Or 470, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001), noting that, in both decisions, the court found plain error despite limited discussion as to how the omission of a jury-concurrence instruction in those cases had been prejudicial.

We, however, have previously rejected a similar argument under analogous circumstances. *See Mellerio*, 279 Or App at 427, 433-34 (rejecting the petitioner's argument that failure to request a concurrence instruction was "categorically prejudicial"). Instead, we have consistently applied a practical, contextual approach in assessing prejudice, as first articulated in *State v. Ashkins*, 357 Or 642, 357 P3d 490 (2015), a direct-appeal case. *Mellerio*, 279 Or App at 434 (holding that harmless-error analysis in *Ashkins* relating to erroneous omission of a concurrence instruction similarly applies to question of whether trial counsel's failure to request instruction was prejudicial for purposes of post-conviction relief); *see Wilson v. Premo*, 280 Or App 372, 386, 381 P3d 921 (2016), *rev den*, 360 Or 752 (2017) (same). Under that approach, the "court should assess putative prejudice (or lack thereof) 'in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue.'" *Mellerio*, 279 Or App at 433 (quoting *Ashkins*, 357 Or at 660).

Given the foregoing case law, we reject petitioner's contention that the failure to request an appropriate *Boots* instruction gives rise to a rebuttable presumption of prejudice. Rather, we consider the parties' arguments and the post-conviction record using the practical, contextual approach adopted through that case law. Applying that approach, however, we ultimately agree with petitioner that the post-conviction court erred in determining that petitioner had not been prejudiced by his trial attorney's deficient performance.

Emphasizing language in *Lotches*, in which the court found harm based largely on whether "juror confusion was likely," 331 Or 470, petitioner asserts that, in his case, there were multiple sources of potential juror confusion. Petitioner first argues that two aspects of the testimony could have confused the jury as to which factual scenario related to the charged, criminal conduct. For one thing, he contends, the fact that Z's own testimony described multiple instances of abuse could itself have caused confusion. And for another, C's testimony about petitioner's encounter with Z in the living room gave the jurors yet another factual scenario to consider as possible criminal conduct, potentially causing further confusion.

In assessing that argument, it bears emphasis that the fact that Z testified to multiple instances of conduct—and that C may have been describing yet another instance of charged conduct—is merely a basis for requiring a jury-concurrence instruction in the first place. Thus, although that circumstance was the basis of the post-conviction court's conclusion that trial counsel had provided inadequate assistance, it cannot, alone, establish prejudice for purposes of an inadequate-assistance claim. That is, even assuming—as is undisputed on appeal—that Z's account of more than one criminal occurrence (with or without C's testimony) obligated trial counsel to request a jury-concurrence instruction, that is only half of the required showing.

Moreover, in the absence of C's testimony, Z's identification of multiple, distinct episodes in which petitioner had sexually assaulted her arguably failed to raise the sort of "circumstantial and evidentiary distinctions" that might otherwise have resulted in an impermissible "mix-and-match" verdict. *Mellerio*, 279 Or App at 436 (finding such distinctions where evidence would support "diametrically different [jury] inferences" as to each of two incidents that could have supported coercion charge). For example, nothing about the evidence or arguments at trial suggested instance-specific questions of credibility for the jury to evaluate. And even though Z's testimony that petitioner had "put his private part on [her] tummy" might have referred to only one of the episodes of criminal conduct, Z's account of petitioner's conduct and the surrounding circumstances

was otherwise undifferentiated. Thus, we see nothing that would indicate that some jurors might have been persuaded only as to one instance of conduct described by Z, with others being persuaded only as to another. *See Ashkins*, 357 Or at 662-64 (trial court's failure to give jury-concurrence instruction was harmless where nothing indicated that "the jury would have reached one conclusion as to some of the occurrences but a different conclusion as to others").

Similarly, petitioner's defenses at trial were not such that some jurors might have accepted them as to one occurrence, while others might have accepted them as to another. Petitioner's defense strategy was not specific to any particular location or instance of alleged conduct. Rather, his strategy was to challenge the allegations as a whole, by questioning whether the abuse had occurred at all, whether the state had proven that any abuse involved sexual penetration, whether any conduct had been engaged in for the purpose of sexual gratification, whether the investigation of the alleged abuse had been "sloppy," and whether the victim's memories or testimony had been unduly influenced by her father and paternal grandmother. Thus, as with Z's testimony, the way in which petitioner's trial attorney defended the case did not in any way differentiate between alleged criminal episodes in a way that might have led to a "mix-and-match" verdict. *See id*. at 662 (no reversible error where defense did not call into question the victim's account of any particular occurrence).

Thus, had the jury heard only Z's account of petitioner's alleged conduct and trial counsel's specific challenges to it, we might well agree with the post-conviction court's determination that petitioner did not establish prejudice. But Z's testimony did not stand alone—the jury also heard C testify about what she had seen petitioner do in the living room. The superintendent's response brief suggests that we can safely disregard that testimony, because the state did not rely on it as an instance of charged conduct. In defending the post-conviction court's rationale, the superintendent argues:

"As the [post-conviction] court noted, the state made clear during its closing argument that the incident about

which the victim testified in detail formed the basis for the charged offenses. The state recounted for the jury the victim's testimony that petitioner had entered her bedroom, pulled off her shirt and pulled down her underwear, touched her on both her vagina and anus, and then put his finger in her vagina and anus. *** The state explicitly told the jury that those actions, performed during that single incident, formed the basis of the four charged sexual offenses."

We disagree for two reasons. First, the state did *not* "explicitly [tell] the jury that those actions, *performed during that single incident*, formed the basis of the four sexual offenses." (Emphasis added.) Rather, as set out above, 320 Or App at 238, the state contended that Z had described *two* instances that could form the basis of the jury's verdict, stating, "She told you what happened: the [d]efendant put his finger into her vagina[;] he put his finger into her butt. He did it *on* [*the*] *two separate occasions* she described." (Emphasis added.) Thus, the post-conviction record does not bear out the superintendent's contention in that regard.

Second, to the extent that we might otherwise be bound by the post-conviction court's apparent finding of fact as to which criminal episode was the focus of the parties at trial, that finding is not binding here, because the record does not support it. The post-conviction court stated, "[i]n this case, it is evident from the record that both the parties were proceeding on the basis that the first occurrence[,] which was described in some detail[,] was the event that both parties were focusing on." However, as set forth above, 320 Or App at 242, the trial court made essentially the opposite finding based upon its observation of the trial.

That is, in rejecting petitioner's *pro se* argument in support of a new trial, the court expressed its understanding that C's testimony related to the charged offenses, even though C described events occurring in the living room rather than the bedroom and that did not expressly involve any of the physical acts that Z attributed to petitioner:

"My memory of [C's] testimony is that she saw you engaging in conduct which could or could not be, depending on the jury's view, but I would assume that they thought that was an incident of sex abuse.

> "I heard no testimony that would lead me to believe that was not *one of the incidents*. I guess that's up for argument, but that's the way I heard the evidence."

(Emphasis added.) Thus, even if the post-conviction court's reference to "the first occurrence[,] which was described in some detail" was intended to encompass both Z's account of petitioner "put[ting] his private part on [her] tummy" in the bedroom and C's account of petitioner kneeling next to Z's bed in the living room—meaning that those two substantially different accounts actually described the same episode—the record does not support the finding that the focus of the trial was on a single "occurrence." Unlike the post-conviction court, the trial court heard the evidence and arguments of counsel firsthand. And given the trial court's view that the jury would have understood C's testimony to describe "one of *the incidents*" of sexual abuse (emphasis added), we conclude that the post-conviction court's finding that petitioner's trial focused on a *single* occurrence lacks evidentiary support in the record. Accordingly, that finding is not binding on appeal.

That conclusion has significant consequences. It means that, contrary to the post-conviction court's understanding, the jury in petitioner's criminal trial had more than one instance of conduct to consider in determining whether the state had proved the charged offenses. True, if despite having multiple occurrences to choose from, the jury believed that Z's graphic accounts of petitioner putting his penis on her stomach and "put[ting] some kind of cream * * * inside [her] private part" described the same occurrence as C's vague account of petitioner kneeling by Z's bed, then counsel's failure to request a jury-concurrence instruction may have been immaterial. That is, under those circumstances a mix-and-match verdict would remain unlikely. But here it is far from clear that Z and C were describing the same episode or that the jury would have understood their testimony in that way.

As a result, a mix-and-match verdict was a real possibility in petitioner's trial. Specifically, some jurors may well have been persuaded by Z's detailed account of what petitioner had done to her and her perceptions of that conduct,

but unpersuaded that C's vague account described a sexual assault of any sort, much less proved an assault beyond a reasonable doubt. Others may have voted to convict based on their view that C's testimony corroborated Z's description of petitioner sexually touching and penetrating her on that occasion, but harbored doubts regarding Z's descriptions of petitioner's more graphic conduct, which C had not observed and so likely occurred on another occasion, if at all. In other words, there is at least some basis to believe that some—but less than all—of the jurors might have voted to convict petitioner on the basis of conduct alleged to have occurred in the bedroom and unwitnessed by anyone other than Z, while a similar subset of jurors might have voted to convict on the basis of conduct that occurred in the living room and that was corroborated by a third-party witness.

In sum, contrary to the post-conviction court's conclusion, petitioner has established that his trial attorney's failure to request a jury-concurrence instruction had a tendency to affect the result of his trial and that he is therefore entitled to post-conviction relief. *See Montez*, 355 Or at 7; *see also Green*, 357 Or at 322 ("[T]he tendency to affect the outcome standard demands more than mere possibility, but less than probability."). Had counsel requested a jury-concurrence instruction, the jury would have known that its verdict as to each count had to be based on the same factual occurrence. *See Teagues*, 281 Or App at 193 (jury-concurrence instruction explains that "the jury must concur as to which occurrence constitutes the offense"). Because the jury was given multiple factual occurrences to choose from and was not advised of that requirement, we are persuaded that there is "more than [a] mere possibility" that counsel's failure caused petitioner prejudice. *Green*, 357 Or at 322. The post-conviction court therefore erred in denying petitioner's first claim for relief.

Finally, petitioner, on his own behalf, raises nine additional assignments of error that largely reprise various ineffective-assistance claims that the post-conviction court rejected as failing both the performance and prejudice prongs of such claims. We have reviewed and evaluated each additional assignment, all of which were properly preserved. Having reviewed those arguments, we conclude

that, although we do not necessarily agree that petitioner failed to satisfy both prongs as to each claim, he did fail to satisfy at least one prong as to every claim. As a result, the post-conviction court did not err in denying the petition for post-conviction relief as to those claims.

Reversed and remanded as to petitioner's first assignment of error; otherwise affirmed.