Submitted on remand from the Oregon Supreme Court August 3; conviction on Count 1 reversed and remanded, remanded for resentencing, otherwise affirmed September 14, 2022.

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS JOHN ROBERT ALLEN,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1401318; A166187

517 P3d 1055

Defendant appealed a judgment of conviction for first-degree assault (Count 1) and first-degree criminal mistreatment (Count 2) of his girlfriend's three-year-old child. In a prior opinion, the Court of Appeals affirmed those convictions. The Supreme Court vacated that opinion and remanded the case for reconsideration in light of *State v. Owen*, 369 Or 288, 505 P3d 953 (2022), and *State v. McKinney/Shiffer*, 369 Or 325, 505 P3d 946 (2022). The Supreme Court's remand implicated only two of the issues raised in defendant's appeal. In the first, defendant argued that the trial court erred in denying his motions for judgment of acquittal because the state had not proved that defendant knowingly caused the child serious physical injury or physical injury such that he could be convicted of first-degree assault or first-degree criminal mistreatment, respectively. In the second, defendant argued that the trial court erred in refusing to instruct the jury that it had to find that defendant acted with criminal negligence with respect to the injury element of his charges. *Held*: (1) The trial court did not err in denying defendant's motions for judgment of acquittal because the knowingly mental state did not apply to the injury element of the charges. (2) The trial court erred in refusing to give defendant's requested jury instruction applying the criminal negligence mental state to the injury element of the charges. That error was harmless with respect to the first-degree criminal mistreatment conviction but was not harmless with respect to the first-degree assault conviction.

Conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

On remand from the Oregon Supreme Court, *State v. Allen*, 369 Or 855, 512 P3d 446 (2022).

Susie L. Norby, Judge.

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Janis C. Puracal filed the brief *amicus curiae* for Forensic Justice Project.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

ORTEGA, P. J.

Conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

**ORTEGA, P. J.**

This case is before us on remand from the Supreme Court, which vacated our prior decision affirming defendant's convictions and remanded the case to us for reconsideration in light of *State v. Owen*, 369 Or 288, 505 P3d 953 (2022), and *State v. McKinney/Shiffer*, 369 Or 325, 505 P3d 946 (2022). *State v. Allen*, 369 Or 855, 512 P3d 446 (2022) (*Allen II*). Defendant appealed a judgment of conviction for first-degree assault (Count 1) and first-degree criminal mistreatment (Count 2) of his girlfriend's three-year-old child. On appeal, defendant primarily challenged the trial court's denial of his pretrial motion to exclude expert testimony that the child was diagnosed with abusive head trauma. We rejected that assignment and affirmed the trial court's ruling that the testimony was admissible scientific evidence. *State v. Allen*, 311 Or App 271, 277-91, 489 P3d 555 (2021), *vac'd and rem'd*, 369 Or 855 (2022) (*Allen I*). Defendant also argued that the trial court erred when it instructed the jury that it could reach a nonunanimous verdict, which we rejected as harmless error because the jury had returned unanimous verdicts. *Id.* at 273. The Supreme Court's remand does not implicate our reasoning on those two issues; thus, we readopt the analysis set out in our prior opinion and affirm the trial court's rulings.

Defendant raised two other issues in his appeal that are implicated by the Supreme Court's remand. In the first, defendant argued that the trial court erred in denying his motion for judgment of acquittal because the state had not proved that defendant knowingly caused the child serious physical injury or physical injury such that he could be convicted of first-degree assault or first-degree criminal mistreatment, respectively. Based on *Owen*, 369 Or at 321, and as explained further below, we reject that argument and affirm.

Second, defendant argued that the trial court erred in failing to instruct the jury on an applicable mental state for the injury element of his charges. In our prior opinion, we concluded that defendant's argument was foreclosed by *State v. Barnes*, 329 Or 327, 986 P2d 1160 (1999), *overruled*

*in part*, *State v. Owen*, 369 Or 288, 505 P3d 953 (2022). In light of the Supreme Court's action in *Owen*, which overruled that holding in *Barnes*, we conclude on remand that the trial court erred in refusing to give defendant's requested jury instruction that the mental state of criminal negligence applies to the injury element of both of his charges. However, we conclude that that error was harmless with respect to his conviction for first-degree criminal mistreatment and affirm that count. We further conclude that the error was not harmless with respect to the first-degree assault conviction and, thus, reverse and remand that count.

For context, we provide the following facts, as set out in our original opinion in this case:

"At the time of the conduct at issue here, defendant lived with his girlfriend and her two children—her five-year-old daughter and her son, R, who was almost three. Defendant would look after the children while their mother was at work. One morning while he was watching the children, defendant called 9-1-1 and reported that, when he went to wake R, he found the child was not breathing. He further reported that he tried CPR and put R into a cold bath. He also reported that R had recently had pneumonia and that, at the time of the call, he was breathing, but was not awake, and defendant was unable to wake him. Upon confirming that defendant had called 20 minutes after finding R, the 9-1-1 dispatcher asked why defendant did not call sooner. He responded that it was because he rushed R into a cold bath and performed CPR and 'was freaking out.'

"During the call, defendant also reported that R 'was run over by the dogs.' Two days before the call, R went over to the family's two Labrador dogs while they were eating, and they knocked him down under their raised dog dishes, pressing his ear to the heater vent. Defendant reported that the dogs had 'stomped' on R 'really hard.' Defendant did not seek medical assistance at the time, and R said that he was okay. R's mother was at work during the incident with the dogs, but defendant and R told her about it that day and she observed that R's ear 'looked like it was pinched' and that he had a half-dollar-sized bruise on his back. Defendant later reported that R had also fallen and bumped his forehead on a concrete step a few days before, which gave R a 'knot' on his head.

"When first responders arrived following defendant's 9-1-1 call, they found R unconscious, pale, and without a detectable pulse. After they performed CPR, R's color improved, and they transported him by ambulance to the hospital. R was diagnosed with an 'acute left convexity subdural hemorrhage,' which means that he had subdural bleeding along the left side of his head. R's initial CT scan showed brain swelling and a hemorrhage on the left side of his brain, with indications that both old and new blood was present.

"R underwent emergency surgery to decrease the pressure on his brain and remove the blood. His neurosurgeon, Dr. Grewe, also noted that R had bruising on his left ear. The surgery, which involved removing a portion of R's skull, revealed that the hemorrhage consisted of all new blood and no old blood, which indicated an acute, or recent, injury. An acute injury would be one occurring within two days; it would not be a week-old injury. Two doctors who became involved in R's care after his surgery, Dr. Leonhardt and Dr. Lang, testified that, because the CT scan of R's brain suggested the presence of both old and new blood, it was likely that R had suffered a hyperacute injury—an injury that was hours old rather than days old; that would explain the impression of both older and newer blood on the CT scan, despite there being no 'old' blood present, as observed during surgery.

"After surgery, the ICU doctor was concerned that R would not survive the night and, because of the nature of his injuries, called Leonhardt for an immediate consult. Leonhardt is a pediatrician at Child Abuse Response and Evaluation Services (CARES) and specializes in treating abuse. Leonhardt observed that R did not appear to have a skull fracture or lumps on his head, which would indicate a contact injury. Leonhardt took photographs of bruises he observed on R, which included bruising on both the inside and outside of his left and right ear, on his back, and on his elbow, and included petechia—small broken blood vessels—on his lower neck near the collarbone. Leonhardt testified that the ear bruising was particularly concerning, because it was not in an area commonly injured by accident. He recommended additional medical evaluations and referred the case to Lang, another pediatrician who specializes in treating abuse with CARES.

"R's bloodwork did not reveal a bleeding disorder, X-rays showed that R had no additional injuries, an MRI of R's brain confirmed the subdural hemorrhage and indicated a 'shear injury' to R's brain itself, and an eye examination found in both R's eyes a few, scattered retinal hemorrhages, or bleeding in the eye. The shear injury to R's brain indicated 'that the brain had gone through some acceleration and deceleration.' The retinal hemorrhages were less conclusive. Lang explained that, in the case of abusive head trauma, children can have 'very significant' retinal hemorrhages, as in too many hemorrhages to count. R's results showed 'more than what we would expect in an accident,' but he 'certainly [did not] have the retinal hemorrhages that are too many to count or that would be clearly almost diagnostic of abusive head trauma.'

"Grewe, R's neurosurgeon, testified that a shear injury is produced by trauma and that the type of injury to R implied that he suffered an acceleration and sudden deceleration. He also testified that he did not believe that R's fall on the concrete step or the incident with the dogs could have resulted in R's injury, because R did not experience loss of consciousness, scalp swelling, or skull fracture from those incidents and because 'it takes a big trauma to produce what he had.'

"Leonhardt opined that all the results, including the absence of a contact injury, suggested that R's injury was an 'acceleration/deceleration injury,' which could occur if a child is violently shaken or thrown down onto a soft surface. ***

"*****

"Lang testified that bruising on R's torso, back, ears, and neck are 'significantly associated with abuse.' Lang also testified that the bruising and swelling on R's elbow 'was outside the range of normal.' In looking at R's case, Lang ruled out other causes for R's injury. Ultimately, taking into account the bruising and lack of a contact injury, Lang concluded that his brain injury 'was most consistent with abusive head trauma and child physical abuse.' Lang testified that, based on the severity of the injury, R would have become immediately symptomatic, indicating that his injury had to be caused within a few hours before R's first CT scan, which indicated a hyperacute injury. Lang also opined that R suffered 'some sort of violent acceleration/

deceleration injury' that could not have been caused by R just falling on his own.

"The jury found defendant guilty of first-degree assault and first-degree criminal mistreatment by unanimous verdicts. This appeal followed."

*Allen I*, 311 Or App at 274-77.

We first address defendant's assignments of error to the trial court's denial of his motions for judgment of acquittal. In Count 1, defendant was indicted with committing first-degree assault by "knowingly caus[ing] serious physical injury to [R], a child under six years of age." In Count 2, he was indicted with committing first-degree criminal mistreatment by "having assumed the care, custody, and responsibility for the supervision of [R], a dependent person, did unlawfully and knowingly cause physical injury to [R]."[1] On appeal, defendant argues that the state was required to prove that he knowingly caused R serious physical injury (for the first-degree assault charge) or physical injury (for the first-degree criminal mistreatment charge), and that he was entitled to a judgment of acquittal because the state failed to put on evidence of his mental state with respect to the physical injury element of the charges.

In our original opinion, we rejected defendant's arguments based on *Barnes*, which held that, for an assault charged with the knowingly mental state, the state did not have to prove that the defendant knew that his conduct would cause serious physical injury. *Allen I*, 311 Or App at 294. In *Owen*, although the Supreme Court overruled

---

[1] ORS 163.185(1)(b) provides:

"A person commits the crime of assault in the first degree if the person *** [i]ntentionally or knowingly causes serious physical injury to a child under six years of age[.]"

ORS 163.205(1)(b)(A) provides, in relevant part:

"(1) A person commits the crime of criminal mistreatment in the first degree if:

"*****

"(b) The person *** having assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person *** intentionally or knowingly:

"(A) Causes physical injury or injuries to the dependent person[.]"

*Barnes* in part, the court "adhere[d] to the holding in *Barnes* that the 'knowingly' culpable mental state does not apply to the injury element." *Owen*, 369 Or at 321; *see also generally State v. Carlisle*, 370 Or 137, 515 P3d 867 (2022) (explaining the holistic approach used to discern whether the legislature intended the knowingly mental state to apply to an element of a crime). As a result, *Barnes* still controls in that regard, and we reject defendant's assignments of error to the denial of his motions for judgment of acquittal.

Finally, we address defendant's assignment of error to the jury instructions. At trial, defendant submitted instructions, rejected by the trial court, that would have instructed the jury that the mental state of criminal negligence applied to the physical injury elements of both charges. In rejecting his challenge to the trial court's ruling in our prior opinion, we relied on *Barnes*. *Allen I*, 311 Or App at 293-94. In *Owen*, the Supreme Court overruled that aspect of *Barnes*. The court held that the result element—physical injury—in the crime of second-degree assault carries, at a minimum, a culpable mental state of criminal negligence and that a trial court errs when it fails to instruct the jury that a defendant must act with a culpable mental state as to the element of causing physical injury. *Owen*, 369 Or at 321-23. We have concluded that the same conclusion applies to first-degree assault, *State v. Hilding*, 320 Or App 487, 502, 514 P3d 79 (2022), and first-degree criminal mistreatment, *State v. Krigbaum*, 320 Or App 281, 282, 512 P3d 1275 (2022), under the sections of those statutes that were charged in this case. As a result, defendant was entitled to have the court deliver the requested jury instructions and the court erred in not doing that. *See State v. McNally*, 361 Or 314, 320, 392 P3d 721 (2017) ("A criminal defendant is entitled to have the jury instructed in accordance with his or her theory of the case if the instruction correctly states the law and there is evidence to support giving it."); *State v. Jury*, 185 Or App 132, 137, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) ("The 'benchmark' for error is the law existing as of the time the appeal is decided.").

Having concluded that the trial court erred, we must determine if that error was harmless. *Owen*, 369 Or at 323. In determining whether instructional error was harmless,

"we consider the instructions 'as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue.'" *Id.* (quoting *State v. Payne*, 366 Or 588, 609, 468 P3d 445 (2020)). A party is prejudiced by instructional error if "the trial court's failure to give the requested instruction probably created an erroneous impression of the law in the minds of the members of the jury, and if that erroneous impression may have affected the outcome of the case." *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106-07, 957 P2d 147 (1998).

Here, the defense theory was that R was injured by accidental falls in the days prior to the 9-1-1 call. The state's theory was that defendant engaged in assaultive conduct, such as throwing R, with such force as to cause R's brain injuries sometime in the hour or two before defendant called 9-1-1, while R's mother was at work. As relevant here, the trial court instructed the jury that:

> "A person acts knowingly or with knowledge if that person acts with an awareness that his conduct is of a particular nature. When used in the phrase 'knowingly caused serious physical injury' or 'knowingly caused physical injury,' 'knowingly' means that the person is aware of the assaultive nature of his conduct, but does not necessarily intend to cause any injury.

> "'Assaultive nature of his conduct' means forceful behavior that is consistent with causing an injury. Knowledge is also established if a person acts intentionally.

> "* * * * *

> "The term 'physical injury' means an injury that impairs a person's physical condition or causes substantial pain.

> "The term 'serious physical injury' means a physical injury that either, one, creates a substantial risk of death or, two, causes serious or protracted disfigurement or, three, causes protracted impairment of health or, four, causes protracted loss or impairment of the function of any bodily organ."

Instructing the jury that defendant must have acted with criminal negligence that his conduct would cause

physical injury—for the first-degree criminal mistreatment charge—would not have affected the verdict. Criminal negligence requires that the defendant "fail[ed] to be aware of a substantial and unjustifiable risk that the result will occur" and "[t]he risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10). The jury found that defendant acted with an awareness that he used forceful behavior that is consistent with causing an injury and in doing so caused R physical injury. The jury also necessarily disbelieved defendant's theory that R's injuries were caused by an accident. In light of the testimony of R's doctors about the severity of his brain injury, that it was a recent injury, and that it would take a "violent acceleration/deceleration" to cause that injury, it is implausible that the jury having so found would then also find that defendant was not at least criminally negligent in failing to be aware that R could experience a physical injury—an injury that impairs a person's physical condition or causes substantial pain—as a result of his assaultive conduct. *See Krigbaum*, 320 Or App at 283 (where the jury found that, based on the jury instructions, defendant knew his conduct was aggressive physical behavior that could result in physical injury, the jury necessarily would have also found that defendant was at least criminally negligent with regard to the physical injury element of first-degree criminal mistreatment); *see also State v. Chemxananou*, 319 Or App 636, 640, 510 P3d 954 (2022) ("It is implausible that the jury, having found that defendant knowingly took those actions [punching and hitting a child with a plate and strangling and kicking another child], would then find that he was not at least negligent with respect to the fact that the children could be injured as a result.").

However, we conclude that instructing the jury that defendant must have acted with criminal negligence that his conduct would causes *serious* physical injury—for the first-degree assault charge—may have affected the outcome of the case with respect to that charge. There is nothing about the jury instructions in this case, or the alleged nature of defendant's conduct, that necessarily would have

required the jury to find that defendant failed to be aware of a substantial risk that his conduct would cause R a serious physical injury, as that term was defined in the jury instructions, and that the risk was of such a nature and degree that defendant's failure to be aware of that risk was a gross deviation from the standard of care. *See Hilding*, 320 Or App at 504 ("This is not a situation where the nature of the assaultive conduct—which in this case was unknown—or other given instructions necessarily encompassed a culpability standard with respect to the serious physical injury element of first-degree assault."); *cf. Owen*, 369 Or at 325 (error in failing to give jury instruction on mental state for injury element of second-degree assault was harmless where, based on other jury instructions, the jury found that the defendant knew that his conduct was assaultive and knew the weapons he used were "readily capable of causing serious physical injury"). As a result, we reverse and remand the first-degree assault count. Given that disposition we do not address defendant's remaining assignments of error that challenged aspects of his sentencing.

Conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.