No. 574          November 8, 2023          1

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CARL ALLEN DYE, JR.,
*Defendant-Appellant.*

Lane County Circuit Court
21CR21866; A177666

Stephen W. Morgan, Judge.

Argued and submitted August 30, 2023.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Defendant appeals a judgment of conviction for fleeing or attempting to elude a police officer by vehicle and on foot, ORS 811.540(1) (Counts 1 and 3); reckless driving, ORS 811.140 (Count 2); and resisting arrest, ORS 162.315 (Count 4). Defendant raises four assignments of error. In his first two assignments, defendant challenges the trial court's denial of his motion for judgment of acquittal on Counts 2 and 3. In his third and fourth assignments, defendant requests that we review as plain error the trial court's failure to instruct the jury that (1) a culpable mental state attached to the "substantial risk of physical injury" element for his resisting arrest charge (Count 4), and (2) the jury must concur on the factual occurrence supporting the charge of vehicular fleeing or attempting to elude (Count 1). As to the first and second assignments, we conclude that the trial court did not err. For the third and fourth assignments, we conclude that any errors relating to the jury instructions were harmless. Accordingly, we affirm.

## I.  FACTS

On May 5, 2021, Springfield Police Officer Parado noticed a speeding Toyota Scion. After following the Scion, Parado eventually got directly behind the car and activated his siren; the driver continued driving and did not stop. The Scion turned onto Cedar Flat Road—a winding, uphill road—and although Parado followed, he eventually lost sight of the car. Parado reported the license plate number to dispatch.

About 20 minutes later, Lane County Sheriff's Deputy Dodds saw a car matching the license plate and description. According to Dodds, traffic in the area that day had been "moderate," and during this encounter, Dodds and the driver passed two businesses. Dodds radioed dispatch, pulled behind the Scion, and began to follow it. Dodds activated his emergency lights to signal the driver to pull over. The driver did not pull over, and instead, the driver accelerated to 90 miles-per-hour in a 55 miles-per-hour zone.

Dodds activated his siren and radioed dispatch that he was in pursuit of the Scion. He followed the car for a

mile and a half, and during that time, the car crossed the center line two or three more times by at least a tire width. After about a mile on the highway, the driver turned left up a driveway that had been affected by a recent fire and was burned out. While Dodds followed the driver up the driveway, his tire pressure warning light appeared, and his vehicle became disabled. Dodds pulled over and discovered that he had two flat tires. He last saw the Scion turn around a bend. About 20 minutes later, additional deputies and state police arrived to help Dodds and continue searching for the Scion.

Springfield Police Officer Hargis, along with other officers, located the Scion about 100 yards from Dodds' vehicle. No one was in the car, but the Scion's engine was running, and it had a flat tire. Other than the police vehicles and Scion, no other vehicles were in the area. Hargis eventually located defendant in a creek nearby—about 10 to 15 yards north of the Scion—lying on a large, flat rock in the middle of the creek with his dog. After locating defendant, Hargis and two other officers went into the creek to retrieve him, and Hargis had to navigate slippery rocks while apprehending defendant. Next to Hargis, there was a waterfall that fell about four to six feet into a plunge bowl. When the officers attempted to handcuff defendant, he did not follow their commands. Hargis grabbed defendant's right arm to help the other officers handcuff defendant. Defendant flexed and pulled his arm forward, which pulled Hargis off-balance while he was standing on the slippery rocks in the creek. Hargis became concerned about falling into the creek and waterfall, so he punched defendant in the face to prevent defendant's resistance. After officers got a handcuff on one of his wrists, defendant began pulling Hargis forward again. Hargis became concerned that he was going to fall into the waterfall and sustain injuries, so he punched defendant in the face a second time. The officers handcuffed defendant and escorted him out of the creek.

Dodds walked to where deputies found the Scion, and he noted that it was the same vehicle that he had pursued. Dodds saw defendant, and he said that defendant appeared to be the person who he saw driving the Scion.

Officers took defendant to the hospital to have his injuries examined. At the hospital, Parado talked to defendant. When Parado asked defendant why he ran, defendant said that he did not want to put up with Parado's attitude. Parado also asked where defendant went after Parado lost him, and defendant said that "he had turned into a random residence *** and turned back around on Cedar Flat[,]" which was where Parado had lost defendant.

Defendant was charged with fleeing or attempting to elude a police officer, ORS 811.540(1)(b)(A) (Count 1); reckless driving, ORS 811.140 (Count 2); fleeing or attempting to elude a police officer, ORS 811.540(1)(b)(B) (Count 3); and resisting arrest, ORS 162.315 (Count 4). At trial, Parado, Dodds, and Hargis testified during the state's case. After the state rested, defendant moved for a judgment of acquittal on all four charges. The trial court denied defendant's motion for judgment of acquittal.

Defendant testified in his own defense. He said that he did not drive to the creek, but rather, he walked 24 miles from his home with his eight-year-old dog. Defendant said that the walk took him five hours. Defendant also testified that he laid on the rock because his back spasmed, and he said that did not pull away from Hargis when officers attempted to arrest him.

The trial court instructed the jury as to the elements of resisting arrest:

> "Count 4—Resisting Arrest. Oregon law provides that a person commits the crime of Resisting Arrest if the person intentionally resists a person known by him to be a peace officer in making an arrest. In this case, to establish the crime of Resisting Arrest, the State must prove beyond a reasonable doubt the following elements: (1) The act occurred on or about May 5, 2021; (2) [Defendant] knew that a person was making an arrest; (3) [Defendant] knew that the person making the arrest was a peace officer; and (4) [Defendant] intentionally resisted the peace officer in making the arrest."

The trial court also instructed the jury as to the definition of "resist":

"Resist. Use or threatened use of violence, physical force, or any other means that create a substantial risk of physical injury to any person, and includes but is not limited to behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody."

During closing arguments, the state argued that defendant's actions in pulling away from Hargis, along with the dangerous conditions of the creek, supported a finding that defendant's conduct created a substantial risk of physical injury. Defendant argued that Hargis was not credible and the jury should believe defendant's testimony that he did not pull away from Hargis.

The jury found defendant guilty on all four counts. Defendant appeals.

## II.   ANALYSIS

As previously noted, defendant assigns error to the trial court's denial of his motion for judgment of acquittal for Counts 2 and 3. In addition, defendant assigns error to the trial court's failure to instruct the jury regarding (1) a culpable mental state for the injury element on the resisting arrest charge (Count 4), and (2) a factual concurrence instruction on vehicular fleeing or attempting to elude police officers (Count 1). We will address each of defendant's assignments of error in turn.

### A.   *Defendant's First and Second Assignments of Error*

When we review the denial of a motion for judgment of acquittal, "we review the record and all reasonable inferences from it in the light most favorable to the state to determine whether a rational trier of fact could have found all the elements of the offense beyond a reasonable doubt." *State v. Smith*, 218 Or App 568, 571, 180 P3d 148 (2008) (citing *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995)).

In his first assignment of error, defendant argues that the trial court erred by denying his motion for judgment

of acquittal on Count 2, reckless driving,[1] because the state (1) failed to prove that defendant drove in a manner that endangered people or property, and (2) failed to prove that he "created a substantial risk of endangering people or property." The reckless driving statute "focuses on the 'manner' in which a person drives, not on the consequences of the person's driving." *State v. Brown*, 305 Or App 644, 653, 471 P3d 811, *rev den*, 367 Or 290 (2020) (citation omitted). "[T]he state may rely on circumstantial evidence and reasonable inferences flowing from that evidence" to prove defendant drove "in a manner that endangers the safety of persons or property." *See Smith*, 218 Or App at 571-72 (citation omitted) (upholding a conviction of reckless driving when a rational factfinder could infer that defendant's driving endangered the safety of persons or property due to the circumstances of traffic and defendant's levels of intoxication).

We conclude that the trial court did not err. A rational trier of fact could find that defendant endangered the safety of persons or property based on the evidence that defendant (1) increased his speed to evade an officer by driving 90 miles-per-hour (35 miles-per-hour over the limit); (2) crossed the center line and entered the oncoming lane of traffic when traffic in that area had been "moderate" that day; and (3) sped past two businesses. Thus, the trial court did not err in denying defendant's motion for judgment of acquittal on the reckless driving charge.

In defendant's second assignment of error, he argues that the trial court erred in denying his motion for judgment of acquittal on Count 3, fleeing or attempting to elude a police officer on foot.[2] He argues that there is insufficient

---

[1] "A person commits the offense of reckless driving if the person recklessly drives a vehicle upon a highway *** open to the public in a manner that endangers the safety of persons or property." ORS 811.140(1)(a). To prove a defendant acted "recklessly," the state must show that the defendant is "aware of and consciously disregards a substantial and unjustifiable risk ***." ORS 161.085(9).

[2] ORS 811.540 provides, in part:

"(1) A person commits the crime of fleeing or attempting to elude a police officer if:

"(a) The person is operating a motor vehicle; and

"(b) A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to

evidence that (1) law enforcement officers pursued defendant when he left his vehicle, or that (2) defendant knew that law enforcement pursued him when he left his vehicle and ran into the creek.

A defendant "attempts to elude" when the defendant "attempt[s] to escape the notice or perception of." *State v. Cave*, 223 Or App 60, 68, 195 P3d 446 (2008), *rev den*, 345 Or 690 (2009). "[T]he focus of an attempt to elude is the defendant's conduct, not the conduct of the officers." *State v. Reed*, 256 Or App 61, 69, 299 P3d 574, *rev den*, 353 Or 868 (2013). Even if a defendant "escapes the line of sight" of police officers, it is still possible for the defendant to "attempt to elude" police officers, so long as the defendant attempts "to escape the notice or perception of the police officers when he or she gets out of the vehicle." *Cave*, 223 Or App at 68 (internal quotation marks omitted).

In this case, the state presented evidence that, when defendant could no longer drive the Scion because it had a flat tire, defendant walked to the center of a hazardous creek nearby. That evidence was sufficient for a rational jury to find that defendant "attempt[ed] to escape the notice or perception of" the officers when he exited his vehicle. Thus, the trial court did not err in denying defendant's motion for judgment of acquittal on Count 3.

B.   *Defendant's Third and Fourth Assignments of Error*

Defendant did not preserve his third and fourth assignments of error, and he requests that we review those assignments for plain error. "To constitute plain error, an error must be one of law, it must be obvious and not reasonably in dispute, and the error must be apparent on the record without having to choose among competing inferences." *State v. Sell*, 328 Or App 82, 94, 536 P3d 1019 (2023) (citing *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013)). When the trial court makes a plain error, it is a matter of

---

bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren, and ***:

"*****

"(B)  The person gets out of the vehicle and knowingly flees or attempts to elude the police officer."

discretion whether we will correct it. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006) (citation omitted).

In his third assignment of error, defendant argues that the trial court plainly erred by not instructing the jury that a culpable mental state attached to the substantial risk of injury element for resisting arrest,[3] which was based on defendant's struggle with police as they attempted to take him into custody in the creek near a waterfall. The state concedes that, under *State v. Owen*, 369 Or 288, 322, 505 P3d 953 (2022), the trial court committed plain error by not instructing the jury as to a culpable mental state for the injury element, but the state argues that the error was harmless. We accept the state's concession and determine that the trial court committed plain error. *See Sell*, 328 Or App at 94 ("Here, the jury was not instructed that defendant had to be at least criminally negligent[4] with respect to the injury element of the crime. That error was one of law, it is not reasonably in dispute after the Supreme Court's decision in *Owen*, and it appears on the face of the record.").

Before we turn to whether we can correct that error, we note that we will consider whether the error was harmless under the state harmless error standard. Recently, in *State v. Horton*, we explained our choice to use the state harmless error standard, rather than the federal harmless error standard, in the unpreserved, plain error context. 327 Or App 256, 263 n 3, 535 P3d 338 (2023). Although we previously said that "'the failure to submit a required element of an offense to the jury is a federal constitutional error' and that the federal harmlessness standard requires that 'the error is harmless beyond a reasonable doubt,'" we applied the state standard for harmlessness because the defendant

---

[3] "A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest." ORS 162.315(1). "Resists" means "the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person." ORS 162.315(2)(c).

[4] Criminal negligence requires that defendant

"fail[ed] to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

ORS 161.085(10).

"had not claimed a federal constitutional violation," and only argued harmlessness under the state standard. *Id*. (quoting *State v. Perkins*, 325 Or App 624, 630-31, 529 P3d 999 (2023)). In addition, we noted that the state standard places the burden of persuasion on the defendant, and the federal standard for harmlessness also places the burden on defendant when the error is not preserved. *Id*. (citing *State v. Torres*, 206 Or App 436, 445, 136 P3d 1132 (2006); *United States v. Olano*, 507 US 725, 734, 113 S Ct 1770, 123 L Ed 2d 508 (1993)). Defendant in this case, like the defendant in *Horton*, does not claim a federal constitutional violation, did not preserve the error, and only argues the state harmlessness standard. Thus, we will review for harmlessness under the state standard.

We now turn to whether we can correct the plain error. If an error is harmless, then we have no discretion to correct the error, and we must affirm; but, if the error was not harmless, we must determine whether to exercise our discretion to correct it. *Horton*, 327 Or App at 262. An error is harmless if there was "little likelihood" that the error affected the verdict. *State v. Ramoz*, 367 Or 670, 704, 483 P3d 615 (2021) (citation omitted). To determine if an error was harmless, "we consider the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *Owen*, 369 Or at 323 (citation and internal quotation marks omitted). "Instructional error is not harmless if it probably created an erroneous impression of the law in the minds of the jury and if that erroneous impression may have affected the outcome of the case." *Ramoz*, 367 Or at 704-05 (citations and internal quotation marks omitted).

In this case, the jury's verdict indicates that the instructional error was harmless. Assuming that the correct mental state for the "substantial risk of injury" element of resisting arrest is, at a minimum, criminal negligence,[5]

---

[5] Although we have rejected the idea that a defendant must act "intentionally" for the "substantial risk of physical injury" element, *State v. Prophet*, 318 Or App 330, 350, 507 P3d 735, *rev den*, 370 Or 472 (2022), Oregon courts have not addressed, and the parties have not asked us to consider, the exact mental state required for that element of this offense. In the absence of the need to make that

the jury's verdict indicates that it necessarily would have also found that defendant was at least criminally negligent with respect to whether there was a substantial risk of physical injury. Criminal negligence requires a finding that defendant "fail[ed] to be aware of a substantial and unjustifiable risk" such that the "failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10). The jury was instructed that, to convict defendant of resisting arrest, it had to find that defendant "intentionally" resisted the officers, *i.e.*, that he intentionally engaged in "behavior clearly intended to prevent being taken into custody by *overcoming the actions* of the arresting officer[.]" ORS 162.315(2)(c) (emphasis added). Since the jury found that defendant intentionally engaged in that behavior, there is little likelihood that the jury would not have also found that defendant failed to be aware that he created a substantial risk of injury to himself or the deputy when he pulled his arm forward while Hargis held onto it—in the middle of a creek with slippery rocks near a waterfall—two separate times. Because the error in the jury instruction regarding resisting arrest was harmless, we affirm defendant's conviction for that charge.

We likewise determine that any error was harmless as to defendant's fourth assignment of error. In that assignment, defendant contends that the court plainly erred in failing to give a concurrence instruction on Count 1, vehicular fleeing or attempting to elude police,[6] relating to the two incidents of driving—when Parado and Dodds pursued him.

determination, we assume, without deciding, that the applicable culpable mental state for that element is, as defendant argues and the state does not dispute, criminal negligence. *See State v. Tow*, 321 Or App 294, 299, 515 P3d 936 (2022) (declining to decide which mental state applies); *see also Owen*, 369 Or at 322-24 (applying a criminal negligence standard for the injury element).

   [6] ORS 811.540 provides, in part:

   "(1) A person commits the crime of fleeing or attempting to elude a police officer if:

   "(a) The person is operating a motor vehicle; and

   "(b) A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren, and * * *:

Even assuming that the trial court erred in not instructing the jury on factual concurrence, any error was harmless.

"A trial court's erroneous failure to give a concurrence instruction is not harmless when, given the evidence and the parties' theories, jurors could have based their verdicts on different occurrences." *State v. Teagues*, 281 Or App 182, 194, 383 P3d 320 (2016) (citations omitted). To determine whether an error in failing to instruct the jury was harmless, we "consider[] the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *State v. Ashkins*, 357 Or 642, 660-61, 357 P3d 490 (2015) (citations omitted).

Based on the evidence presented at trial, there is little likelihood that the jury would have found that defendant was not the same person driving in both instances, or that either instance did not constitute vehicular fleeing or attempting to elude—*i.e.*, it is unlikely that the jury based its verdict on different occurrences. Defendant testified and argued at trial that he was not the driver in either instance because he had not driven that day, and the law enforcement officers testified as to defendant's identity. Defendant also argued that the officers should not be believed as they were not credible. The jury's verdict indicates that it did not believe defendant's theory of the case. Therefore, any error in not providing a concurrence instruction was harmless, and we affirm defendant's conviction of vehicular fleeing or attempting to elude police.

Affirmed.

---

"(A) The person, while still in the vehicle, knowingly flees or attempts to elude a pursuing police officer[.]"