176 July 31, 2024 No. 536

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

PHILLIP DEAN HAIGHT,
*Defendant-Appellant.*

Polk County Circuit Court
20CR62612; A177115

Rafael A. Caso, Judge.

Submitted July 6, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

Conviction on Count 3 reversed and remanded; remanded for resentencing; otherwise affirmed.

**JACQUOT, J.**

In his sole assignment of error, defendant challenges his resisting arrest conviction, ORS 162.315 (Count 3), arguing that the trial court plainly erred when it failed to instruct the jury that a culpable mental state attaches to the "substantial risk of physical injury" element of that crime.[1] The state concedes that the trial court plainly erred, and we agree. *See State v. Tow*, 321 Or App 294, 298, 515 P3d 936 (2022) ("[T]he trial court plainly erred when it did not instruct the jury that it had to find that defendant acted with a culpable mental state with respect to 'the substantial risk of physical injury' element in ORS 162.315(2)(c)."). The disputes in this case are whether the error was harmless and whether we should exercise our discretion to correct it. For the following reasons, we conclude that the error was not harmless, and we exercise our discretion to correct it.

At trial, evidence showed that a deputy tried to pull defendant over for a traffic violation. Defendant did not stop; instead, he drove about one mile home. After getting out of his truck, defendant disobeyed the deputy's orders to stop and headed towards his house. A second deputy shot defendant with his taser and discharged two five-second shocks to defendant. But the taser did not stop defendant, who ran into his house. A short time later, defendant appeared at the door. The two deputies grabbed his arms and tried to pull him outside. Defendant attempted to retreat back into his home, pulling the deputies along with him and "kind of twisting." But with the help of a third deputy, they were able to pull defendant out of the house. When defendant did not put his hands behind his back and pulled away, one deputy jumped onto defendant's back and another used a leg sweep to finally get defendant to the ground. The area where the arrest occurred was muddy, and defendant had a soft cast on his left hand from a surgery, which became loose during the arrest. Defendant continued to twist his body and use his strength in a way that made it difficult for the deputies to handcuff him. One deputy "was holding [his] weight on

---

[1] Defendant does not challenge his convictions for fleeing or attempting to elude a police officer, ORS 811.540 (Counts 1 and 2), or interfering with a peace officer, ORS 162.247 (Count 4).

[defendant's] head to keep him from getting up because it seemed like he was trying to get up."

The crime of resisting arrest occurs when a person "intentionally resists a person known by the person to be a peace officer * * * in making an arrest." ORS 162.315(1). In relevant part, "resists" means that a person uses or threatens the use of "violence, physical force or any other means that creates a substantial risk of physical injury to any person * * *." ORS 162.315(2)(c). Because a culpable mental state of at least criminal negligence attaches to the "substantial risk of physical injury" element,[2] a properly instructed jury would have had to find (1) that defendant failed to be aware that he was creating a substantial risk of physical injury and (2) that that risk was "of such nature and degree that the failure to be aware of it constitute[d] a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10) (defining "criminal negligence").[3]

In assessing whether the omission of a mental-state instruction was harmless, "the issue is not whether a jury *could* have found defendant to have the requisite mental state on this record; rather, it is whether there is some likelihood that the jury might *not* have been persuaded that he had the requisite mental state, had it considered that issue." *State v. Stone*, 324 Or App 688, 695, 527 P3d 800 (2023) (emphases in original). In this case, the jury could have concluded that pulling away from the deputies and twisting on the ground was not such egregious and risky conduct that failing to be aware of the risk of injury was a "*gross* deviation" from the standard of care. We are not persuaded by the

---

[2] Oregon courts have not addressed the exact culpable mental state required for the "substantial risk of physical injury" element on this offense. *See Tow*, 321 Or App at 299 (declining to decide which mental state applies). We need not make that determination here, so we assume, without deciding, that the applicable culpable mental state is criminal negligence. *See State v. Dye*, 329 Or App 1, 10, 540 P3d 66 (2023) (assuming, without deciding, that "the correct mental state for the 'substantial risk of injury' element of resisting arrest is, at a minimum, criminal negligence").

[3] The jury could also have convicted defendant if it determined that he had acted intentionally, knowingly, or recklessly. *See* ORS 161.115(3) ("If the definition of an offense prescribes criminal negligence as the culpable mental state, it is also established if a person acts intentionally, knowingly, or recklessly.").

state's argument that the use of force by the deputies in this situation compels the conclusion that defendant was more likely to be injured by pulling away than by submitting to arrest and handcuffing after all that had already occurred as a result of defendant's initial traffic violation.

Because the error here was not harmless, and the interests of justice weigh in favor of allowing defendant to present his case to a properly instructed jury, we exercise our discretion to correct the error. *See State v. Allen*, 321 Or App 678, 687-88, 517 P3d 1055 (2022) (reversing and remanding conviction for first-degree assault due to failure to give mental state jury instruction because jury may not have found that the defendant "acted with criminal negligence that his conduct would cause *serious* physical injury" even if the circumstances made it likely it would have found "physical injury"). Resisting arrest is a person Class A misdemeanor that could have sentencing impacts in the future. *See* OAR 213-003-0001(15) (including ORS 162.315 as a "Person Class A misdemeanor"); OAR 213-004-0008 ("Every two prior adult convictions of person Class A misdemeanors in the offender's criminal history shall be counted as one adult conviction of a person felony for criminal history purposes."). The state has no legitimate interest in upholding an erroneously obtained conviction, and defendant is entitled to have a properly instructed jury make a decision on the resisting arrest count.

Conviction on Count 3 reversed and remanded; remanded for resentencing; otherwise affirmed.